FRIERSON *et al. v.* SHEPPARD *et al.*

(Division B.   April 7, 1947.)

[29 So. (2d) 726.   No. 36414.]

Campbell & Campbell and L. J. Wise, all of Yazoo City, for appellants.

No appearance for appellees in this Court.

L. A. Smith, Sr., J., delivered the opinion of the court.

Robert Frierson was the owner of a farm containing 429 acres in Yazoo County, Miss., as to 160 acres of which he had executed an oil lease to Southern Natural Gas Company. Aggie J. Frierson is the wife of Robert. Appellees, the Sheppards, are husband an wife. On their own initiative, with experienced advice and aid, they prepared and negotiated with appellants the conveyance to them by appellants of a "Mineral Right and Royalty Transfer," embracing all of the land on part of which was then, as stated, the oil lease, ante. There was also

another legal document in existence at the time affecting said lands, not here necessary to discuss.

The conveying clause of the instrument between the parties hereto, supra, reads as follows: "has granted, sold and conveyed and by these presents does grant, sell and convey unto said grantee an undivided one-sixty-fourth (1/64) interest in and to all of the oil, gas and other minerals of every kind and character in, on or under that certain tract or parcel of land," describing it. The price was $160, which was paid, and the instrument delivered and recorded.

Some months later appellees claimed to have discovered that this language did not express the true agreement between them and appellants, and, after negotiations, failing to obtain from appellants what they asserted was a conveyance according to the real agreement, they filed this suit, seeking reformation accordingly in the Chancery Court of Yazoo County. A copy of the instrument was made Exhibit "A" to the original bill, and is referred to as such hereinafter. In their original bill the alleged mutual mistake was thus described: "It was the intention and agreement (of all parties) that the defendants were to sell and actually selling an undivided one-eighth full participating mineral interest in said land, subject however, to an existing oil, gas and mineral lease then affecting said land and held by the Southern Natural Gas Corporation." It was further averred that the appellants intended to convey and the appellees intended, by said instrument, to purchase "a full participating mineral interest to the extent of an undivided one-eighth of all the oil, gas and minerals," subject only to the existing lease. It was, therefore, charged that since the executed instrument failed so to deal with the transaction, such failure was due to the mutual mistake of all of the parties, and entitled appellees, as complainants below, to have the same reformed accordingly.

To this bill of complaint appellants filed an answer in which they denied there was any mutual mistake, and

affirmatively charged that Exhibit "A" to the original bill, the instrument sought to be reformed, was "the correct price that your defendants, Frierson, contracted for and expected to receive from said complainants, Sheppard and wife, and was the fair and reasonable market value or price of said one-sixty-fourth interest as conveyed by said instrument, and was according to the proposition made by complainants Sheppard to your defendants and accepted and acted on by said defendants." Denial was made that the parties intended "conveying one-eighth mineral interest" in the lands of defendants. Appellants further averred their denial that "Exhibit 'A' does not conform to the true and express intention of the parties thereto, and deny that by error of the scrivener, describes and conveys only an undivided one-sixty-fourth interest in all oil, gas and minerals in said lands, whereas it was intended and believed by the parties thereto that said instrument conveyed an undivided one-eighth of all oil, gas, and minerals therein."

The Chancellor heard the proof and entered a final decree, granting appellees the relief sought. The decree directed that Exhibit "A," supra, be reformed "by striking and deleting therefrom the words 'an undivided one-sixty-fourth (1/64) interest in and to all of the oil, gas and other minerals of every kind and character,' . . . and inserting in said deed in lieu of said stricken clause the words 'an undivided one-eighth (1/8) interest in and to all of the oil, gas and other minerals of every kind and character.' "

By so doing, we are of the opinion that the learned Chancellor committed reversible error. While we always reverse a Chancellor reluctantly, where the evidence is in conflict, it is nevertheless our duty to do so in proper cases, and we conceive this to be one of such occasions. All of our pronouncements, as to the degree of evidence required to secure the reformation of an instrument, are exclusively to the effect that such modification must be sustained by proof beyond a reasonable doubt. Rogers

v. Clayton, 149 Miss. 47, 115 So. 106. In the case of Watson et al. v. Owen, 142 Miss. 676, 107 So. 865, 866, we said: "A party who seeks to reform a written instrument has the burden of proving mutual mistake beyond a reasonable doubt. Parol testimony to reform must be received with 'great caution and distrust.' " Judge Sharkey, speaking for the Court, in the early case of Harrington et al. v. Harrington et al., 2 How. 701, said: "The proof should be clear beyond a doubt . . . it is better that a doubtful written instrument should stand than that a doubtful provision should be substituted by parol testimony. . . . We cannot, on the mere ground of probability, reform written instruments for mistakes." This announcement was approved, by quotation, in the comparatively recent case of Progressive Bank of Summit v. McGehee et al., 142 Miss. 655, 107 So. 876. Therefore, in our judgment, since the evidence in the record did not prove the alleged mutual mistake beyond reasonable doubt, the Chancellor should have dismissed the original bill.

With their answers appellants filed a cross bill. In it, they reiterated the averments of their answer that Exhibit "A" truly expressed the real agreement of the parties. They also charged in the cross bill that unless the agreement was truly set forth in Exhibit "A," then there was no agreement whatever between the parties,—"That your cross complainants are advised and believed that since there was no meeting of the minds between these cross complainants and the said cross defendants that the entire transaction between the said parties as shown by said instrument marked Ehibit 'A' hereto, is null, void, and of no effect." A tender was made of the $160 purchase price, and the cross bill concluded with a prayer for cancellation of the instrument. However, since appellants had repeatedly, in their answer, asserted that appellees were not entitled to reform Exhibit "A," because it truly expressed the agreement between all the parties, they could not make the answer a cross bill on the inconsistent and

repugnant ground that there was no meeting of the minds of the parties, and pray for a cancellation of the instrument their answer contended was the agreement of all concerned. Without an answer there could be no cross bill; and if a cross bill, it must be consistent with the answer. The court may not entertain a cross bill inconsistent with such answer. The authority for this rule is general, and in accord. See Sec. 381 Griffith's Miss. Chan. Prac., p. 386. And so are the authorities generally. 30 C. J. S., Equity, Sec. 384, p. 798; 19 Am. Jur., p. 234; 5 Ency. Pl. & Pr., p. 645.

The Chancellor, therefore, could not consider the cross bill in view of the above rule, nor may we here.

We reverse the decree of the chancery court and dismiss the original bill, rendering decree accordingly for appellants.

Reversed and decree for appellants.