AMERICAN ALLIANCE INS. COMPANY, N. Y., et al. *v.* ALFORD

No. 40357          January 21, 1957          92 So. 2d 191

*Watkins & Eager,* Jackson; *Roach & Jones,* McComb, for appellants.

*McLaren, Dixon & McMillan*, McComb, for appellee.

LEE, J.

Harold D. Alford, by his bill of complaint against American Alliance Insurance Company, New York, and J. A. Fellows, its agent, charged, in effect, that the defendants, on October 9, 1953, issued to him a policy in the amount of $3000 to cover a stock of merchandise on the premises of 1213½ Delaware Avenue, in McComb, Mississippi, where his business was operated; that later he rented a brick building at 123 N. Front Street, and a frame and sheet metal building called the tin barn, in the rear of the brick building; that he applied to the defendants for a removal permit to remove his merchandise to the new location; that this was granted on November 3, 1953, good for a period of five days; that

both he and Fellows understood that, upon removal, his full stock would be covered to the extent of the policy; that the permit described the brick building, but inadvertently did not mention the tin barn; that the omission of the tin barn from the permit was a mutual mistake; and that on February 13, 1954, fire of unknown origin destroyed the tin barn, causing him damage in the amount of $1,839.64. The prayer of the bill was for a reformation of the permit and policy so as to include the tin barn, and for a decree in his favor for the amount of the loss.

The defendants, in their answer, denied that the premises at 123 N. Front Street consisted of both buildings, but averred that they were a considerable distance apart, with no connection whatever. They alleged that they offered to issue the permit in question in any manner desired by the complainant, but that he asked that it cover 123 N. Front Street only; that the permit was so issued on November 3, 1953, to cover only 123 N. Front Street, and was delivered to, and accepted by, the complainant; and that at no time prior to the fire did he advise that he desired coverage for any other place. They denied that it was the intention of the parties, by the removal permit, to afford protection for the tin barn, denied that such coverage was omitted through inadvertence, and denied that the complainant had any right to reform the policy. As an affirmative defense, they set up the failure and refusal of the complainant to comply with certain provisions of the Iron Safe Clause.

Alford testified that, on October 9, 1953, he had a showroom on State Street on which he carried no insurance. He used a garage on the premises of his home at 1213½ Delaware Avenue for his business, and this was covered by the policy. Later he rented the brick building on Front Street and the nearby tin barn, and advised Fellows that he planned to move from the place on State Street, and his garage on Delaware Avenue to

the location on North Front Street and the tin barn directly behind it "for storage of merchandise and a workshop"; that Fellows prepared and delivered the removal permit, advised that it gave five days in which to move, and said that the merchandise was covered while being moved from his place on Delaware Avenue. He also testified that Fellows advised him that the rate on the downtown risk would be higher, and that later, he paid the increased rate. He was sure that Fellows understood that both buildings were to be occupied, and it was Alford's understanding that the entire stock was covered to the amount of the policy. He further said "and I assumed myself to be covered by insurance for my merchandise." When he called, during the fire on February 13, 1954, to report the loss, Fellows told him that he was not covered at the barn.

On cross-examination, the witness admitted that the two buildings were separate, that there was no connection between them, that they were owned by different people, and that they were about 75 feet apart, although counsel for the defendants later conceded that they were between 30 and 45 feet apart. Alford said that he knew that he mentioned the tin barn, "and him (Fellows) being an insurance man would know what to do. I depended on him, as I had always depended on the insurance man." He admitted that he had the removal permit from November 3 until the fire on February 13, but that he did not read it.

The bill for insurance, dated January 4, 1954, and subsequently paid and receipted on January 22, 1954, showed an increase in premium on account of "additional endorsement for removal to N. Front Street." Neither the policy nor the permit made any reference to the tin barn, which was the place where the fire occurred.

The removal permit contained this significant provision:

"REMOVAL PERMIT

November 3, 1953.

"Permission is hereby given for 5 days to remove property insured under this policy from No. 1213½ on Delaware Ave. Street, to the 2 story Brick building, with Approved roof, while occupied by HAROLD AL-FORD as Retai home furnishings & Venetians Blinds situated No. 123 on the W. side of North Front Street, Block No.___ in McComb, Miss.

"It is a condition of this insurance that during such removal this policy shall attach in both localities in proportion as the value in each bears to the value in both; but when the removal is complete, this policy shall attach only in the new location."

On January 4, 1954, there was an endorsement on the policy, changing the coverage from stock and home furnishings to "contents", and the location of the property was 123 N. Front Street.

Fellows testified that the policy in question was a renewal. Before October 9, 1953, he inquired of Alford whether to renew it. Alford informed him that he was contemplating a new location, and asked if, in that event, the coverage could be changed to that place. When assured that this could be done, he authorized the renewal. Prior to November 3, Alford advised that he was moving to 123 N. Front Street and the tin barn. Fellows explained that he could issue a removal permit for coverage thereafter and while he was moving, but needed to know whether he would carry coverage at both locations, because they were different buildings, and it was necessary to know how much to apply to each. He further explained that the rate on N. Front Street would be higher than on Delaware Avenue, and that the rate on the tin barn would be still higher than that on N. Front Street. Alford then stated that he would probably carry most of his merchandise at 123 N. Front Street, and told Fel-

lows to let the permit cover that location. Accordingly, he issued and delivered the permit to Alford, and "told him it would cover him at both places, that is, the location at 1213½ Delaware Avenue and 123 N. Front Street during the process of moving and after he moved he would be covered at 123 N. Front Street." He was positive that he was told by Alford to cover the merchandise at 123 N. Front Street. He was asked, "Did Mr. Alford ever specifically request you to insure the contents of the tin barn?" His reply was, "To my knowledge, No, Sir." Again he said, "He did not tell me to cover the tin barn." Fellows did not charge a premium for insurance on the contents of the tin barn.

The decree of the court awarded the relief prayed for, and the defendants appealed.

■■ ■ Proof beyond a reasonable doubt is required in order to sustain the reformation of a written instrument. Harrington v. Harrington, 2 How. 701; Progressive Bank of Summit v. McGehee, 142 Miss. 655, 107 So. 876; Watson v. Owen, 142 Miss. 676, 107 So. 865; Rogers v. Clayton, 149 Miss. 47, 115 So. 106; Frierson v. Sheppard, 201 Miss. 603, 29 So. 2d 726; J. J. Newman Lumber Co. v. Robbins, 203 Miss. 304, 34 So. 2d 196; Brown v. King, 214 Miss. 437, 58 So. 2d. 922.

■■ ■ The effect of Alford's evidence was that he asked for the removal permit. Fellows knew that he was going to occupy both buildings, and Alford assumed that he would be covered because it was his understanding that the entire stock was covered to the amount of the policy. He did not say that Fellows had a like understanding. He did not testify that he instructed Fellows to cover the tin barn, or that he agreed to do so.

On the contrary the positive evidence of Fellows was that, after he made a full explanation, including the higher rates, Alford stated that he would probably carry most of his merchandise at 123 N. Front Street, and for him to let the permit cover that location. When Fel-

lows delivered the permit, he told Alford that, after moving, he would be covered at 123 N. Front Street. The permit itself showed this. Alford, after Fellows testified, did not again take the witness stand and deny anything that Fellows had testified to. Although he was a business man, Alford did not read the permit in spite of the fact that he had it in his possession for more than three months before the fire. He certainly ought to have been aware of its contents. Springfield Fire and Marine Ins. Co. v. Nix, 162 Miss. 669, 138 So. 598.

In the absence of instructions to cover, or an agreement by the parties to cover, the tin barn, the mere assumption of Alford that he had insurance on this building was wholly insufficient to sustain his prayer for reformation in the light of the detailed explanation by Fellows, undenied, as to why it was not covered, and the other corroborating evidence. The decree should have been for the defendants.

In view of the conclusion already stated, it is deemed unnecessary to deal with the defense on the Iron Safe Clause.

The decree of the lower court is reversed, and a decree will be entered here for the appellants.

Reversed and decree here for appellants.

*Roberds, P. J.,* and *Hall, Kyle,* and *Holmes,* JJ., concur.