CONTINENTAL OIL COMPANY, et al. *v.* WALKER, et al.

No. 41285          January 18, 1960          117 So. 2d 333

*George Wear,* Houston, Texas; *John K. Keyes,* Collins; *Brunini, Everett, Grantham & Quin,* Jackson, for appellant, Continental Oil Company.

*Swep S. Taylor, Jr., W. B. Fontaine,* Jackson, for appellants, Oscar F. Wilkinson and Mrs. Frances Wilkinson.

*O. B. Triplett, Jr.,* Forest; *L. D. Pittman,* Raleigh, for appellees.

Holmes, J.

This is a suit to quiet title to certain lands and the minerals therein in Smith County. The suit was originally filed on January 5, 1957 by Friend B. Walker as complainant against Continental Oil Company and others as defendants. In his original bill the said Walker claimed title to one-half of the minerals in the NE¼ of the NW¼ of Section 4, Township 1 N, Range 7 E, and to the entire SE¼ of SW¼ of Section 33, Township 2 N, Range 7 E, and sought to cancel all claims of the de-

fendants thereto. Later an amended bill was filed in which additional parties who claimed interests under and through Friend B. Walker were made parties complainant, and additional parties were brought in as defendants.

During the pendency of the litigation, settlements were effected with all parties claiming adversely to the complainants except the Continental Oil Company and Oscar F. Wilkinson and his wife, Mrs. Frances Wilkinson. On the trial of the case the chancellor granted the relief prayed for by the complainants and cancelled the adverse claims of the defendants and dismissed the cross-bills of the defendants. From a decree entered quieting the title of Friend B. Walker and those claiming under or through him, the Continental Oil Company and Oscar F. Wilkinson and his wife, Mrs. Frances Wilkinson, appealed, and the issues presented are those arising between the said appellants and appellee's here. Numerous instruments consisting of mineral conveyances, oil and gas leases, and assignments of leasehold interests in minerals were introduced in evidence and made exhibits in the record, but we refer to those only which are pertinent to the issues arising between the parties to this appeal.

The land involved consists of two contiguous tracts, each containing 40 acres, described as the NE¼ of the NW¼ of Section 4, Township 1, Range 7 E, and the SE¼ of the SW¼ of Section 33, Township 2, Range 7 E.

On December 29, 1936, Dr. Oscar Wilkinson, the then owner of said land, conveyed the same to his nephew, Oscar Wilkinson, one of the appellants here. On October 9, 1943, the said Oscar Wilkinson and his wife conveyed to W. G. Nelson an undivided one-half interest in the minerals in the NE¼ of the NW¼ of said Section 4. This conveyance was filed for record on October 23, 1943, and its validity is not questioned. The real controversy, therefore, is with respect to the title to one-

half of the minerals in the NE¼ of the NW¼ of said Section 4 and the entire SE¼ of the SW¼ of said Section 33.

The litigation stems from an alleged forged mineral deed dated June 16, 1944, filed for record February 26, 1945, purporting to be executed by Oscar Wilkinson and his wife, Frances Wilkinson, and purporting to convey to D. A. Wilkinson, the father of Oscar, an undivided one-half interest in the minerals in all of the land here involved.

It is charged by the appellees and the appellants Oscar and Frances Wilkinson that this mineral conveyance, as well as a timber deed purporting to be executed the same day by the same grantors to the same grantee, conveying the timber on said land, are forgeries and are wholly ineffective to vest any title in the purported grantee. Thereafter by instrument dated February 28, 1945, and filed for record March 3, 1945, the said D. A. Wilkinson purported to convey to R. D. Hall an undivided one-half interest in the minerals in the said NE¼ of the NW¼ of said Section 4, and on October 27, 1954, the said Hall executed to Constant H. Mayeaux an oil and gas lease on said mineral interest, the same being filed for record on November 4, 1954. On the same date, the said Mayeaux assigned said oil and gas lease to Continental Oil Company by written assignment dated October 27, 1954, and filed for record August 7, 1955. By virtue of this assignment Continental Oil Company claims a valid oil and gas lease on one-half of the minerals in the NE¼ of the NW¼ of said Section 4, wholly denying that the mineral conveyance dated June 16, 1944, purporting to be executed by Oscar Wilkinson and his wife to D. A. Wilkinson, is void as a forgery.

The alleged forged mineral deed dated June 16, 1944 purports to have been acknowledged by Oscar and his wife on the same date before Louise Fant, a Notary Public in Hinds County, Mississippi, and the Notary's

certification appears on the back of the deed. There is no substantial dispute in the evidence that on said date Oscar was in military service and was in an Army Camp in Indiantown, Pennsylvania, and that his wife was then visiting him, and that on the date of said purported acknowledgment the said Oscar Wilkinson was not in Hinds County and therefore could not on that date have acknowledged signing the deed in said county. Both Oscar and his wife so testified and Oscar's sister corroborated them. In addition to the testimony of Oscar and his wife and sister, a handwriting expert testified that the signatures on the mineral deed were not the signatures of Oscar and his wife. ▉▉▉ We are not unmindful of the rule that a presumption of execution arises from the certification of the acknowledgment but such presumption is rebuttable and the facts of this case rebut such presumption. ▉▉▉ chancellor found from the evidence that the mineral deed was a forgery and this finding, in our opinion, is supported by substantial evidence. ▉▉ ▉ The deed, therefore, did not operate to pass title, and the Continental Oil Company acquired no rights under the assignment to it of the oil and gas lease executed by Hall to Mayeaux, since Hall claimed through the void mineral deed to D. A. Wilkinson. This conclusion is in accord with the prior decisions of this Court. In the case of Lee v. Duncan, 220 Miss. 234, 70 So. 2d 615, the Court said:

"Mrs. Daisy Duncan testified that she did not sign the deed and that she did not authorize anyone to sign her name for her; and that she could not write her name, but that when she executed an instrument it would have to be by her mark. Appellants concede that Mrs. Duncan cannot write her name. The deed in question has on it in someone's handwriting 'Daisy Duncan'. Her testimony and this concession are ample to rebut the presumption of execution by her arising from the acknowledgment. There was substantial support in the record

for the chancellor's finding that Mrs. Duncan did not execute the deed. For that reason she is not bound by it even as against an innocent purchaser for value."

In Prater v. Prater, 208 Miss. 59, 43 So. 2d 582, the Court said: "An altered instrument does not operate to pass title, and when Mrs. Stribling purchased on the faith of the public records she does not occupy the position of an innocent purchaser for value as to the interest of Neal Prater. 2 Am. Jur., p. 619, Sec. 31. This is true for two reasons, one reason is that the title as to his one-half interest has never passed out of Neal Prater by instrument of writing required by the statute of frauds, and secondly, a purchaser under a forgery is not exalted by law into the preferred position of innocent purchaser for value, and a thief can give no title."

██ ██ Oscar Wilkinson was discharged from military service on December 8, 1945, and returned to Smith County. On December 13, 1945, he went to the chancery clerk's office in Smith County and filed for record his discharge. On that occasion he checked the records, with the aid of J. C. Craft, a deputy chancery clerk, to ascertain the status of the title to his land. At that time he discovered the forged mineral deed and also the forged timber deed. He did not confront his father with the forgeries because he said his father was a sick man, and in fact he died some six months later. On August 15, 1949, he went to the chancery clerk's office in response to a notice that the time for redemption for the sale of his land for taxes was about to expire. He saw Mr. Craft, the deputy clerk, and asked him to figure the cost of redemption. Mr. Craft figured the costs accrued in his office and told Oscar to go to the sheriff's office and ascertain there the amount of additional taxes accrued. This he did and on his return he ascertained the total cost of redemption. He said that it was more than he was able to pay and he would have to let the land go. The evidence is in conflict as to what immedi-

ately occurred thereafter. Craft testified that he asked Oscar if he wanted to sell the land and that Oscar then offered to sell the land for $150.00. Oscar testified that Craft offered him $125.00 for the land. At any rate, an agreement was there reached whereby Oscar agreed to sell the land for $125.00 or $150.00 with the understanding that Craft was to pay the outstanding taxes. There is no evidence that any pressure was brought to bear upon Oscar to sell his land, or that he was acting otherwise than freely and voluntarily. It is not clear from the evidence as to who drew the deed in the clerk's office, but there is no proof that either Craft or Walker, the chancery clerk, received any fee for drawing the deed. The deed was made to Friend B. Walker, but the record reveals that the deed was for the benefit of both Walker and Craft. Walker was not in the office at the time the deed was prepared but was with the Board of Supervisors and Craft sent for him and told him what had transpired. Oscar advised both Craft and Walker of the forgeries. Walker agreed to the purchase and paid the consideration with the understanding that Oscar would aid them in any proceeding to cancel as clouds upon the title the forged instruments. Oscar then executed the deed conveying the entire 80 acres to Walker. Thereafter Walker and Craft executed an oil and gas lease to Constant H. Mayeaux under date of October 22, 1954, covering the SE¼ of the SW¼ of said Section 23, which lease was assigned to Continental on October 27, 1954. The chancellor found from the evidence that the said Mayeaux, an agent of Continental, was fully informed of the forgeries at the time he purchased said lease, and the evidence amply supports such finding. The proof for the appellees further shows that at the time Mayeaux purchased the lease from Walker and Craft, Mayeaux declined to purchase a lease on the NE¼ of the NW¼ of said Section 4 because the title thereto was clouded by the aforesaid forgeries.

■■ In addition to contending that the proof is insufficient to establish the forgery, the appellant, Continental Oil Company, also contends that this action is barred by the statutes of limitation, Sections 709 and 710 of the Mississippi Code of 1942. It is sufficient to say with respect to this contention that the statutes relied upon have been held by this Court not to apply except where the person invoking the same has been in adverse possession of the land against the true owner. Kennedy v. Sanders, 90 Miss. 524, 43 So. 913. ■■■ Of course, it is undisputed in this record that the minerals herein involved have never been taken possession of by Continental Oil Company.

■■ But it is further contended by Continental Oil Company that the appellees, Walker and Craft, are barred from bringing this action by estoppel and laches. We do not find that these contentions are well founded. In addition to the proof that the mineral deed to Hall was acquired by him prior to the deed to Walker, the proof is abundant to sustain the finding of the chancellor that Walker and Craft were guilty of no fraud, concealment, misrepresentation, or acts calculated to mislead Continental Oil Company or those through whom the Continental Oil Company claims, but that at the time Mayeaux purchased the oil and gas lease from Walker and Craft, the deed to Walker was of record and Mayeaux was fully informed of such fact and of the forgery.

In the recent case of Craft v. Everett, 115 So. 2d 133, decided October 19, 1959, we held that equity will not on the mere ground of silence relieve one who is perfectly acquainted with his rights or has the means of becoming so. The Court, quoting from Roberts v. Bookout, 162 Miss. 676, 130 So. 175, said: ''One should ordinarily inquire into the title before he undertakes to purchase land. He whose title is of record has given the notice which all are bound to respect, and generally the law does not require more. . . One who has an interest in

land is not estopped by his silence at a time when he knew that another was mortgaging the land as his own in fee, where the interest of such party appears of record.''

■■ ■ We are accordingly of the opinion that Continental's plea of estoppel is not well founded. We also find no merit in the contention that Walker and Craft are barred by laches. In the case of Hill v. Nash, 73 Miss. 849, 19 So. 707, this Court held that no claim is barred by laches until the limitation has attached, and that laches is no defense if the proceedings are brought within the prescribed period of limitation. We have further held that laches is not merely delay, but delay that results in injustice or disadvtange to another. In the case of Laster v. Ard, 42 So. 2d 737, the Court, quoting from Sample v. Romine, 193 Miss. 706, 8 So. 2d 257, 263, 9 So. 2d 643, 10 So. 2d 346, said:

''Aside from statutes of limitation, laches, in a legal sense, is not merely delay, but delay that results in injustice or disadvantage to another. Time is only one element. There must be some other element than mere passage of time, some element of estoppel or change in conditions of relations of the parties, or intervention of rights of third persons, so that it would be inequitable to permit the party to then assert his rights. There is no absolute rule as to what constitutes laches or staleness of demand. Each case must be determined under its own peculiar circumstances. *Too, the question of laches is largely addressed to the sound discretion of the Chancellor, and his decision will not be disturbed on appeal unless it is clearly wrong and amounts to an abuse of discretion.*'' (Emphasis ours)

The facts as disclosed by this record clearly show that there has been no change in conditions to support the plea that the appellees are guilty of laches. The only change in conditions since the discovery of the forgery by Oscar was the death of Oscar's father, and this oc-

curred in about six months after the discovery of the forgery, and this of itself is not, in our opinion, sufficient to establish laches on the part of the appellees.

The appellant, Continental Oil Company, further contends, however, that under the cover-all clause of the oil and gas lease executed by Walker and Craft to Constant H. Mayeaux on October 22, 1954, covering the SE¼ of the SW¼ of said Section 33, and assigned to Continental, the said lease should be held to include the NE¼ of the NW¼ of said Section 4. This cover-all clause is as follows:

"It is the intention of lessor to include not only the above described land, but lessor also grants, leases and lets to lessee any and all other land and interests in land owned or claimed by lessor in the sections in which any of the above described land is situated or in adjoining or adjacent sections and adjoining or adjacent to the above described land; and upon lessee's ascertaining the description of any such additional, excess or vacant land or interest therein, lessee shall pay to or tender to lessor an additional bonus on the same per acre basis as that paid for the acreage stipulated above."

The chancellor held, and we think rightly so, that such clauses are not looked upon with favor by the courts and that they are intended to cover only irregular or omitted strips of land. A clear statement of the meaning of the cover-all clause in an oil and gas lease appears in an article written by Jack H. Ewing in the May 1947 issue of the Mississippi Law Journal, wherein it is said: "In an oil and gas lease there is always a recital that the leased premises contain a certain number of acres more or less. This recital of quantity is the basis for determining the amount of annual delay rental and is often the basis for determining fractional mineral and royalty interests. It would, therefore, seem to be the intention of the parties for the instrument to cover approximately the number of acres set out therein. It is

also commonly known that one of the purposes of the cover-all clause is to gather into the description small strips of areas forming a part of the tract as a whole, not a part of the lands particularly described, but adjacent thereto, the reason for their not being particularly described being that a particular description of them is not available but, in most cases, dependent upon a survey.''

Continental argues, however, that the clause here under review is not the usual or typical cover-all clause as appears in the usual form of lease. It is true that the phraseology of the clause here under review is broader than the cover-all clause usually appearing in the ordinary oil and gas lease. ██ ██ Nevertheless we are of the opinion that it was not the intention of the parties that the clause in question should bring under the terms of the lease the additional 40 acres described as the NE¼ of the NW¼ of said Section 4, but that it was the intention of the parties that the same should bring under the lease only small adjacent strips of land or irregular areas forming a part of the particularly described tract as a whole. This is made clear by the language of the assignment of the lease which Mayeaux executed to Continental. This assignment assigned to Continental the lease ''insofar as said lease covers the following described land in the County of Smith, State of Mississippi, to-wit: SE¼ of SW¼ of Section 33, Township 2 N, Range 7 E.''

It is clear to us from the language of the assignment that Mayeaux assigned to Continental the lease which he purchased from Walker and Craft *only insofar as said lease covers the SE¼ of the SW¼ of said Section 33*. Of course, such assignment would include adjacent small strips or irregular area forming a part of the tract as a whole, but it is clear to us under the language of the assignment that it was the intention of the parties to assign to Continental the lease from Walker and Craft

insofar as it covers the particularly described tract as a whole.

The Wilkinsons contend that the deed from Oscar to Walker should be declared null and void because of the provisions of Section 8669, Mississippi Code of 1942, which are in part as follows: "It shall not be lawful for a clerk of any court of record or the deputy or assistant of any such clerk, . . . . to exercise the profession or employment of an attorney or counselor at law, or to be engaged in the practice of law, or to receive any fee or reward for any such services rendered during his continuance in such position; and any person offending herein shall be guilty of a misdemeanor. . ."

Wilkinson testified that the deed to Walker was prepared by some clerk in the chancery clerk's office at the direction of J. C. Craft. Mr. Craft testified that he did not recall who drew or prepared the deed. Oscar and Craft, however, both testified that Walker was not present at the time the deed was prepared and that in fact the deed had already been prepared and executed when Walker was called in. There was no proof that any fee or commission was paid to anyone for drawing the deed. ■■ ■ It is contended by the Wilkinsons that these facts are sufficient to show that the chancery clerk or his deputy were exercising the profession or employment of an attorney or counselor at law, or were engaged in the practice of law. We think that it would require a far stretch of the imagination to so conclude. We think that it was never the intention of the legislature to preclude a person from drawing his own deed in a single transaction. The Wilkinsons further contend, however, that the deed to Walker from Oscar Wilkinson should be declared null and void as being against the public policy of the State. They argue that "a public office is a public trust and the holder thereof may not use it directly or indirectly for personal profit; and officers are not permitted to place themselves in a position in which per-

sonal interest may come into conflict with the duties which they owe to the public.''

We think this argument would be sound if there was evidence in the case to support it. There is no proof, however, that either Walker or Craft used the office of chancery clerk to procure the conveyance from Oscar Wilkinson to Walker, nor is there any proof that in the conveyance to Walker the personal interest of the chancery clerk was in conflict with the duties which the chancery clerk owed to the public. The simple facts. are, as disclosed by the record, that when Oscar Wilkinson ascertained that the amount of taxes necessary to redeem the property from tax sale was more than he was able to pay, he was willing to sell the property and engaged voluntarily in a sale thereof to Walker and Craft. Neither Walker nor Craft used the pressure of the office of chancery clerk to procure such conveyance or undertook to persuade or influence Oscar to make the conveyance. The conveyance was his own voluntary act. ■■■ We do not find, therefore, that under the proof either Walker or Craft violated any of the duties of the chancery clerk's office, or any of the duties which they as officials owed to the public. Consequently, we are of the opinion that the contention of the Wilkinsons that the conveyance to Walker should be held void because against public policy cannot be successfully maintained.

It is contended by the Wilkinsons in the alternative that in the conveyance to Walker it was his intention and that of Walker that there should be conveyed to Walker the surface of all of the land here involved, and an undivided one-half interest in the minerals in the SE¼ of the SW¼ of Section 33, and that the conveyance should be accordingly reformed so as to carry out the intention of the parties. Oscar Wilkinson undertakes to support this contention by his own testimony. His testimony, however, is denied by Walker and Craft, and the chancellor found that there was insufficient evidence to support such contention. ■■ ■ This Court has held that the

reformation of an instrument on the ground of mutual mistake must be sustained by proof beyond a reasonable doubt. Frierson v. Sheppard, 201 Miss. 603, 29 So. 2d 726; American Alliance Insurance Co. of N. Y. v. Alford, 229 Miss. 855, 92 So. 2d 191. ■■ ■ We think the finding of the chancellor that the evidence was insufficient to warrant the reformation of the instrument on the ground of a mutual mistake is amply supported by the evidence and that we would not be warranted in holding that such finding of the chancellor was manifestly wrong.

For the reasons hereinbefore set forth, we are accordingly of the opinion that the decree of the chancellor should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.