607 So.2d 37 (1992)
Vester THOMPSON, Charlie Applewhite and Robert W. Vaughan
v.
SHELL WESTERN E & P INC., Formerly Shell Oil Company, William H. Fuqua, Dan Wilson, Orel Bridges, Jr., Florida Exploration Company, Charles B. Parker, Partnership Properties Company, Jefferson B. Goldman, Jr., Jack D. Gooden, Elwood M. Ruhl, Conner D. Smith, Edward C. Andress, Paul D. Cate, Dalco Oil Company, First Mississippi Corporation, Toxey Puckett, Herschell J. McCunn, Continental Illinois Energy Development Corporation, Merchantile National Bank at Dallas, Grover B. Castle, Trustee, Jim R. Hamilton, Trustee, Cecile Wagner, Carl D. Wagner, Eugene J. McGarvey, Jr., William K. McGarvey, M.D., Mrs. Anna McClelland and Vaughn Daniel Yeager.
No. 89-CA-0068.
Supreme Court of Mississippi.
July 1, 1992.
Rehearing Denied November 19, 1992.
*38 H. Craig Castle, Jr., Thomas J. Lowe, Jr., Jackson, for appellants.
Walker L. Watters, Gerald & Brand, Ernest O. Spencer, III, Spencer Tyra Crecink Marine & McKnight, Jackson, Ernest W. Graves, Kenneth E. Bullock, Gibbes Graves Mullins Bullock & Ferris, Laurel, for appellees.
En Banc.
PITTMAN, Justice, for the Court:
Vester Thompson, et al., instituted this action in the Chancery Court of Jefferson Davis County against Shell Western E & P, Inc., et al., alleging that: (1) an instrument executed on November 18, 1939, by J.M. and Anna Thompson was a Mineral Deed as opposed to a Royalty Deed; and (2) the signature of Anna Thompson on the 1939 instrument was a forgery and was in fact made by one of the complainants, Lura Thompson Applewhite.
The original complaint was filed on July 15, 1983, and the cause was tried on May 12-13, 1986. The lower court determined, on December 10, 1986, that the conveyance in question was a mineral conveyance rather than a royalty conveyance. This position was affirmed by this Court in Knox v. Shell Western E & P, Inc., 531 So.2d 1181 (Miss. 1988) and is not an issue on appeal. Furthermore, with respect to the signature of Anna Thompson, the trial court ruled that her signature was not a forgery in that Anna Thompson presumptively adopted the signature as her own. The chancellor stated that "this record fails to reflect any proof that [the signature] was not ratified or adopted or approved by [Anna Thompson]."
Aggrieved by the chancellor's finding, complainants appeal to this Court.

I.
J.M. and Anna Thompson were the owners of a forty acre tract of land in Jefferson Davis County, Mississippi. The Thompsons had always lived, farmed, and raised livestock on their property without regard to the mineral interests that they possessed. This changed, however, in November of 1939 when landman Charles Kelly approached the Thompsons and offered to purchase a 15/16th interest in their mineral rights. The Thompsons agreed to Kelly's proposal and executed a Mineral Deed dated November 18, 1939, purporting to convey an undivided 15/16th interest in the forty acre tract. This instrument was signed by both J.M. Thompson and his wife Anna Thompson as the grantors of the conveyance. The document was witnessed by Ed Reese, Lura Thompson and R.W. DeGraw.
Now, more than forty years later, complainants allege that the 1939 Mineral Deed is void because the signature of Anna Thompson was forged. Appellants suggest that Thompson was uneducated and could not sign her name. They would show, therefore, that the interests of Shell Oil, et al., should be declared null and void and cancelled as they affect plaintiffs' ownership of the oil, gas and minerals in and to the forty acre tract of land.
Shell Oil, on the other hand, suggests that the signature of Anna Thompson, being acknowledged by three witnesses on the face of the instrument, carries the strong, legal presumption of validity and legitimacy. Alternatively, Shell Oil submits that the signature of Anna Thompson, if indeed made by another, was made with her approval and knowledge and was adopted or ratified by Thompson at the time of execution. As a result, appellees ask that the well-reasoned opinion of the lower court be affirmed on appeal.
Vester Thompson, the son of J.M. and Anna Thompson, testified that he grew up on the forty acre homestead of his parents. He stated that his father had very little education but could read, write and sign his name. Vester stated that his mother had no education and was unable to read, write or sign her name. He related that Anna Thompson would make her "mark" when signing her name and Vester identified this "mark" on several documents.
Vester continued his testimony by stating that J.M. and Anna continually possessed the forty acre property in question. *39 He related that after his parents passed away, he and his sister Lura inherited the land and lived there without an interruption of possession. Vester testified that he eventually sold his interest in the land to Lura Thompson Applewhite and her husband Charlie.
Vester stated that in November of 1939, he and his wife, his parents, and his sister Lura were living on the property at issue. He worked intermittently during that time and was not at home on November 18. Vester testified that his mother, Anna, performed domestic work for different families in the community and was "probably" not at home during the day of the 18th. He related that his sister Lura, however, was living at home and could read, write and sign her name with ease. Vester stated that he was familiar with Lura's handwriting and signature and identified her script on a number of exhibits. In his opinion, the signature of "Anna Thompson" on the November 18, 1939, Mineral Deed was the handwriting of his sister, Lura.
After the above conclusion of Vester Thompson, the following hearsay testimony was proffered by counsel for appellants. Vester testified that Lura told him that: (1) she signed her mother's name to the Mineral Deed in question at the direction of one of the landmen; and (2) Anna Thompson never knew that the conveyance contained her signature. Vester related that Lura also executed an Affidavit, in August of 1984, evidencing her forgery of her mother's signature.[1]
Frank Hicks, an examiner of "questioned documents" from the Mississippi Crime Lab, testified that he reviewed the handwriting and signature of Lura Thompson Applewhite on a number of documents. He related that after reviewing Lura's penmanship, he believed that she was the one who "signed" the name of "Anna Thompson" to the Mineral Deed of November 18, 1939.
On cross-examination, Hicks admitted that he had difficulty in forming his opinion. His initial report evidenced this fact, but after receiving more documents containing the handwriting of Lura Thompson Applewhite, Hicks testified that Lura was indeed the person who signed the name of "Anna Thompson" on the questioned Mineral Deed.
Daisy Reese, a niece of J.M. and Anna Thompson, testified that Anna had no education and signed her name by making a "cross mark." Daisy testified that Anna worked in the community during the day and was generally not at home. She stated that Lura was living with her parents around the time of the execution of the Mineral Deed.
Alvia Thompson, J.M. and Anna Thompson's daughter-in-law, testified that Anna Thompson had no education and could not read, write or sign her name. Alvia stated that she recognized the handwriting of Lura Thompson Applewhite and believed that Lura was the one who signed "Anna Thompson" to the Mineral Deed of November 1939.
Van Thompson, J.M. and Anna Thompson's son, testified that his mother could not read or write her name. He stated that she would execute her signature by either making an "X" or by "touching the pen." Van testified that he was very familiar with his sister Lura's handwriting and signature. He stated that he felt that she was the one that signed "Anna Thompson" on the Mineral Deed at issue.
On cross-examination, Van stated that he has observed his mother make an "X" as her signature.
Ronald Halfacre, an attorney and landman from Brandon, Mississippi, testified for the appellees. Halfacre testified that he was hired in the mid-70's to do title curative work involving the Mineral Deed in question. He stated that he traveled to the Thompson property and spoke with Lura Thompson Applewhite regarding the November 18, 1939, conveyance. Halfacre stated that Lura never raised any questions *40 regarding the validity of the deed or its signatures.
After the completion of the defendants' case, this cause was recessed until the court's ruling on December 10, 1986. The chancellor held that although he was not satisfied that Anna signed the document, the plaintiffs failed to put on any proof that she did not ratify, adopt, or approve the signature. Since the plaintiffs failed to prove that Anna's signature was a forgery by clear and convincing evidence, the chancellor dismissed the Bill of Complaint and Amended Bill of Complaint at the cost of the Plaintiffs.

II.
Vester Thompson asserts on appeal that the Mineral Deed of November 18, 1939, should be set aside due to the forged signature of grantor Anna Thompson. When a party challenges the validity of a properly acknowledged deed, that party must overcome several presumptions favoring the legitimacy of the document. The first presumption provides that where a deed is properly acknowledged, the instrument is presumed to be authentic because the certificate of acknowledgment imports verity and presumptively states the truth. This presumption can be overcome only by clear and convincing evidence. Jones v. Minton, 244 Miss. 354, 358, 141 So.2d 564, 565 (1962). The second presumption holds that where a grantor's signature is placed on an instrument by the hand of another, the grantor presumptively adopts this signature as his own absent clear and convincing evidence to the contrary. Jones, 244 Miss. at 358, 141 So.2d at 566.

A. Presumption of Authenticity

Vester admits that a properly acknowledged deed is presumptively authentic and can only be challenged by clear and convincing evidence. He suggests, however, that ample evidence was presented below to establish the invalidity of the Mineral Deed in question.
Shell Oil, on the other hand, asserts that appellant cannot prove, by clear and convincing evidence, that Anna Thompson did not in fact sign the Mineral Deed at issue. Shell suggests, therefore, that this appeal is without merit and that the ruling of the lower court should be affirmed.
In Woodson v. Jones, 203 Miss. 152, 33 So.2d 316 (1948), the lower court upheld a deed of trust allegedly signed by Jodie Woodson. Ms. Woodson testified at trial that she did not sign or deliver the trust instrument. Woodson's son testified that he in fact forged the signature on the deed of trust without his mother's knowledge. This testimony was corroborated by the fact that the signature on the trust document was misspelled.
On appeal, this Court found that there was clear and convincing evidence to establish that Woodson's signature was a forgery. The Court concluded that the trial judge had placed too much emphasis on the presumption of authenticity created by the notary's acknowledgment. Justice Alexander stated:
The learned chancellor may have invested the jurat of the attesting officer with too large a degree of presumption. The officer had died and reliance was placed upon his certificate that the parties "personally appeared" before him and "acknowledged that they signed and delivered" the trust deed. Conceding the prima facia effect of such certificate, it was not sufficient to overcome the testimony of the witnesses in court, particularly when corroborated by the production of the genuine signatures of Linwood Woodson and of Jodie Woodson.
Woodson, 203 Miss. at 154-55, 33 So.2d at 316.
In Arnold v. Byrd, 222 So.2d 410 (Miss. 1969), this Court upheld a trial court finding that the signature on a warranty deed was a forgery. There, the alleged grantor of the deed, John Byrd, died on July 20, 1967. Five days later, Byrd's sister filed a purported warranty deed, dated July 21, 1961, that was acknowledged by a Florida notary and signed by the mark of John Byrd. Byrd's wife challenged the purported deed establishing that: 1) John Byrd was not in Florida on the date in question; *41 2) that Byrd was capable of signing his name; and 3) that the person appearing before the Florida notary did not match the physical description of John Byrd.
On appeal, this Court affirmed the finding of the trial court stating that the evidence presented below was sufficient to overcome the prima facia case of validity. Justice Rodgers concluded that:
It is true that there is a presumption that a certificate of acknowledgment states the truth; moreover, the introduction of a properly acknowledged deed into evidence establishes a prima facie case that such deed is genuine. Such an acknowledgment can only be overthrown by evidence so clear, strong and convincing as to exclude all reasonable controversy as to the falsity of the certificate.
An examination of the record, however, has convinced us that the testimony in this case is overwhelming in favor of the complainant. It is clear, cogent and convincing.
Arnold, 222 So.2d at 411.
In Continental Oil Co. v. Walker, 238 Miss. 21, 117 So.2d 333 (1960), this Court upheld the lower court's finding of a forged mineral deed. There, the complainants introduced the following evidence at trial: 1) the grantors, who were alive to testify, informed the court that they did not sign the purported instrument; 2) a handwriting expert testified that the signatures on the deed were not the signatures of the grantors; and 3) the grantors established that they were in another state on the purported date of the mineral deed.
On appeal, this Court concluded that the evidence presented at trial was sufficient to rebut the presumption of validity. Justice Holmes stated that:
We are not unmindful of the rule that a presumption of execution arises from the certificate of the acknowledgment but such presumption is rebuttable and the facts of this case rebut such presumption.
Continental, 238 Miss. at 30, 117 So.2d at 336.
As established by the above cases, the presumption of validity and authenticity can only be overthrown by a strong evidentiary showing. In the case sub judice, the complainants introduced the following evidence: 1) testimony from the friends and family of Anna Thompson that she could not read, write, or sign her name; 2) testimony that Anna signed her name with an "X"; 3) expert testimony concluding that Anna's signature on the 1939 deed was in reality made by her daughter, Lura; and 4) testimony tending to show that Anna was not at home during the day.
As expected, the parties differ on their assessment of this evidence in light of the decisions in Woodson, Arnold and Continental Oil. Suffice it to say, however, that the complainants have made a strong showing and it is necessary to review the second presumption that attends the issue before this Court.

B. Presumption of Adoption and Ratification

The second presumption surrounding this appeal arises from Jones v. Minton, supra. That presumption holds that where a grantor's signature is placed on an instrument by the hand of another, the grantor presumptively adopts this signature as his own absent clear and convincing evidence to the contrary.
In Jones, this Court reviewed a forgery question virtually identical to the issue now before the Court. There, the property was the homestead of W.A. Chain and his wife, Sebell Chain. The deed in question was purportedly executed by the Chains on December 30, 1939, before two subscribing witnesses. The signatures of both W.A. and Sebell Chain were handwritten, and one of the subscribing witnesses made the statutory affidavit. The deed was recorded on January 23, 1940.
More than twenty years later, the plaintiffs, who were successors in title to W.A. Chain, filed suit against the successors in title to the purported grantee, Ed Dawson, attempting to prove that the signature of *42 Sebell Chain was forged.[2] The plaintiffs introduced two of the daughters of the Chains and one or more other witnesses to establish that Sebell Chain could not read or write. Also, evidence was produced showing that Sebell Chain made her signature by mark. The chancellor found that complainants had not met their burden of proof and held that the name of Sebell Chain was not forged on the deed. On appeal, this Court affirmed the ruling of the chancellor and discussed the presumptions implicit in the Court's decision. Justice Gillespie stated:
There is a presumption against bad motive, dishonesty and fraud, and fraud is not a thing to be lightly charged and most emphatically not a thing to be lightly established. A mere preponderance is not sufficient to establish fraud; it must be established clearly and convincingly, especially where a long time has elapsed and some of the actors are dead. Griffith, Miss. Chancery Practice, Sec. 589. Another presumption is involved in this case. The certificate of acknowledgment to the deed in question imports verity and presumptively states the truth. This presumption can be overcome only by clear, strong, and convincing evidence... . This presumption arises whether the acknowledgment is made before an officer in the usual form or by the affidavit of a subscribing witness. Both are statutory methods of acknowledgment. In Simmons v. Dantzler, [152 Miss. 428, 118 So. 829 (1928)], it is indicated that there may be a difference between the presumption arising from the certificate of acknowledgment made before an officer and one proven by a witness, but we are unable to see any practical difference.
The two presumptions just mentioned are independent of each other but equal in force and coextensive as to the area of operation in the case at bar. Since the deed purports to bear the actual signature of Sebell Chain, presumably it was her actual, personal signature. We assume, without necessarily deciding, that the proof in this case is sufficiently strong, clear, and convincing to overcome the presumption that Sebell Chain actually affixed said signature to the deed. Therefore, Sebell Chain did not personally sign the deed. The deed does not purport to be signed by the mark of Sebell Chain. But we are not done with the presumptions, for it is presumed that since Sebell Chain did not actually affix her signature, and did not place her mark on the deed, she adopted the writing of some other person as her signature. The question then arises: Did the complainants overcome the presumptions with clear and convincing evidence? The record answers that there was no evidence that Sebell Chain did not adopt the writing of some other person as her true signature. Therefore, the chancellor was not only justified in his finding, but probably could not have lawfully found otherwise. His finding that the complainants did not meet the burden of proof is fully justified.
It may not be entirely accurate to say that appellees' position in this case is supported by presumptions only, although the presumptions are entirely sufficient until overcome as aforesaid. The deed itself and the acknowledgment thereon constitute evidence of its genuine execution... . [I]t is perfectly clear that complainants' case must fail because they did not produce clear and convincing evidence that Sebell Chain did not execute the deed by adopting the affixed signature as her own.

Jones, 244 Miss. at 358-59, 141 So.2d at 565-66 (citations omitted) (emphasis added).
On appeal, Vester asserts that the decision in Jones, and especially the presumption of adoption and ratification, has been ignored by the later decisions of this Court. He suggests that by failing to cite Jones in the Arnold decision, this Court has expressed a willingness to disregard the erroneous *43 presumption that a person adopts their "forged" signature absent clear and convincing evidence to the contrary.
Moreover, Thompson asserts that the presumption of adoption and ratification should be disregarded because when a person adopts or ratifies the signature of another, this act should be accomplished by a formal instrument in the presence of a notary. In 1 Am.Jur.2d, Acknowledgments, § 82 at 501-02 (1962), the following is noted:
The fact that the name of the grantor was signed by another person is of no importance if the instrument was acknowledged in due form. The officer does not certify that the signature was affixed by the grantor, and by appearing and declaring that the signature is his, the grantor recognizes and adopts as his signature his name affixed to the instrument by someone else. The instrument is thus made valid, even though the signature was not made in compliance with a statute requiring that where the signature is made by another, he must sign his name as a witness. The rule has been applied where it was claimed that the name signed to the instrument was a forgery, or was written without request.

A grantor can adopt his name subscribed to an instrument by another where he makes his mark as his signature, by making a formal acknowledgment of the instrument before an officer, although he is able to write his own name. As against any person who without knowledge has acted thereon, the grantor is estopped to deny that the signature is his.
(emphasis added)
This Court has often said that a chancellor's finding of fact will not be overturned save for manifest error. In the case sub judice there is conflicting evidence and we cannot hold that the chancellor is manifestly wrong.

III.
The decision in Jones is dispositive on appeal. The record contains no credible evidence to show that Anna Thompson did not knowingly adopt her signature on the 1939 Mineral Deed. In fact, common sense, as well as the presumption against bad motive, dishonesty and fraud, leads to the conclusion that Anna's husband, her daughter (as a witness to the instrument) or her brother (as another witness to the Mineral Deed) informed Anna of the conveyance and she then adopted and ratified her signature. To believe otherwise, would run contrary to the well-reasoned decision of the chancellor below. This Court will not reverse a chancellor's finding of fact unless it is manifestly wrong or against the overwhelming weight of the evidence. Andrews v. Waste Control, Inc., 409 So.2d 707, 714 (Miss. 1982).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
NOTES
[1] This affidavit was deemed inadmissible, however, because Lura Thompson Applewhite died before this matter came to trial.
[2] Both W.A. and Sebell Chain died prior to the filing of the lawsuit as did grantee Ed Dawson. Jones, 244 Miss. at 357, 141 So.2d at 565.