Rogers *v.* Clayton.[*]

(Division A.   Jan. 2, 1928.)

[115 So. 106.   No. 26658.]

1. Damages. *That recital in sales contract, that note was part of purchase price of goods, was not advantageous to seller did not render contract ambiguous regarding whether note was for liquidated damages.*

That recital in contract for purchase of fixtures and stock of goods, that one thousand-dollar note from buyer was to be part of

purchase price of stock of goods, was not advantageous to seller and did not add anything to value of contract from his standpoint did not render contract ambiguous as to whether one thousand-dollar note was for liquidated damages in case of breach rather than as payment on purchase price.

2. REFORMATION OF INSTRUMENTS. *One seeking to reform contract must prove mutual mistake beyond reasonable doubt.*

One seeking to reform a contract has burden of proving mutual mistake beyond reasonable doubt.

3. REFORMATION OF INSTRUMENTS. *Equity courts, in suit to reform contract, may not make new contracts for parties.*

Equity courts in suits for reformation of contract may not make new contracts for parties, and even though same may not be kind of contract that ought to have been made, yet, if language is plain and unambiguous, it must be shown beyond reasonable doubt that mutual mistake was made.

4. REFORMATION OF INSTRUMENTS. *In suit to reform sales contract to show note was given by buyer as liquidated damages instead of as part payment, evidence did not show mutual mistake beyond reasonable doubt.*

In suit for reformation of contract for purchase of fixtures and stock of drug store providing that one thousand-dollar note given by purchaser was to be part of purchase price, on ground that true agreement was that note should be for liquidated damages in event of breach, evidence did not show mutual mistake beyond reasonable doubt entitling plaintiff to reformation.

5. REFORMATION OF INSTRUMENTS. *Evidence not establishing that seller was damaged by buyer's breach of contract to purchase drug store fixtures and stock, seller could not recover.*

In suit for reformation of contract for purchase of fixtures and stock of drug store and for judgment for damages on note alleged to have been part of contract, where no damage was proved as result of buyer's breach except speculative damages and bare statement of seller that he was damaged one thousand dollars, without any explanation or basis of calculation, seller was not entitled to recover damages and bill should have been dismissed.

---

*Corpus Juris-Cyc. References: Damages, 17CJ, p. 940, n. 79 New; Reformation of Instruments, 34Cyc, p. 910, n. 47; p. 984, n. 33; p. 988, n. 41 New; Party seeking reformation of instrument on ground of mutual mistake has burden of proving alleged mistake, see 23 R. C. L. 365.

APPEAL from chancery court of Tippah county.

HON. N. R. SLEDGE, Chancellor.

Suit by Shannon Clayton against Frank Rogers for reformation of a contract and judgment for damages on a note which was alleged to have been part of the contract. From the decree, defendant appeals. Reversed and rendered.

*W. C. Sweat,* for appellant.

This court has held that the reformation of an agreement sought by reason of an alleged mistake in drawing it up can only be had upon proof clear and free from doubt. *Inc. Co.* v. *McQuaid,* 114 Miss. 43, 75 So. 255; *Moseby* v. *Wall,* 23 Miss. 81, 55 Am. Dec. 71; *Harrington* v. *Harrington,* 2 How. 701; *Jones* v. *Jones,* 88 Miss. 784, 41 So. 375; *Watson* v. *Owen,* 142 Miss. 676, 102 So. 865.

Furthermore, in order to reform an instrument because of a mistake, it must be a mutual mistake. If the contract expressed the intention of one of the parties, and did not express the intention of the other party, if both parties were in good faith, there can be no reformation of the instrument. 23 R. C. L., par. 20, p. 327; *Wilszinski* v. *L. N. O. & T. R. R. Co.,* 66 Miss. 610.

If the court should hold that the contract should be reformed, as Clayton contends for, then he could still not recover on the thousand-dollar note because this note was clearly a penalty and not intended as liquidated damages. 8 R. C. L., par. 123, p. 574; *Coker* v. *Brevard,* 90 Miss. 64, 47 So. 177; *Bright* v. *Rowland,* 3 How. 398, 17 C. J., sec. 233, p. 934; 8 R. C. L., par. 116, p. 567; 8 R. C. L., par. 127, pp. 578-79.

If the complainant had desired to recover his actual damages, if any, he did not make a case therefor by his bill, and he did not bring himself within the rule in his proof which would enable him to recover any actual damages at all. See *Cargin* v. *J. S. Eaton & Bros.,* 133 Miss. 151, 97 So. 532; *Walker Bros.* v. *Dagett,* 115 Miss. 657, 76

So. 569.; *American Cotton Co.* v. *Herring,* 84 Miss. 683, 37 So. 117.

*Bolton & Mohaghan,* for appellee.

Appellant's contention is that this one-thousand-dollar note was a penalty and not liquidated damages, and that appellee so understood it because in answering the question of the court he used the word forfeit, whereas at the same time he told the court he did not make the fine distinction between forfeit and liquidated damages. Being a layman, he could not be expected to use precise legal terms, but he shows his general understanding of the matter. In fact, the word forfeit is a general term and may cover either liquidated damages or penalties. 12 R. C. L., par. 2, p. 124; *Norman* v. *Vickery,* 128 S. W. 453.

In *Shields* v. *Early,* 95 So. 841, this court said that in construing a contract to determine whether a provision is for liquidated damages or a penalty, the thing the court is anxious to ascertain and give effect to is the intention of the parties. We shall not go into an extended discussion of the testimony, which is impracticable and undesirable in a brief, but viewing it as a whole and the conduct of the parties, we think it clearly shows that the intention of the parties was that these one-thousand-dollar notes were to protect the other party against damages from breach of the contract. See, also, 8 R. C. L. 569, par. 118; *Talkin* v. *Anderson,* 19 S. W. 852; *Norman* v. *Vickery,* 128 S. W. 452; *Westbay* v. *Terry,* 103 S. W. 160; *Brown* v. *Staple Cotton Co-Op. Assn.,* 132 Miss. 859, 96 So. 848.

Argued orally by *W. C. Sweat,* for appellant.

McGOWEN, J., delivered the opinion of the court.

In the chancery court of Tippah county, Shannon Clayton, appellee here, filed his bill against Frank Rogers,

appellant, seeking the reformation of a contract and judgment for damages on a note which was alleged to have been part of the contract. It was alleged that the contract established, with reference to the note, did not express the true intention of the parties. The bill prayed for a reformation of the contract in accordance with the allegation of the bill as to the true intention of the parties, and for the enforcement of the collection of the note for one thousand dollars. The said note was dated December 12, 1924, and due January 1, 1925. It was a bank note of the usual form.

We shall not state the facts of the case in detail, but only enough for a proper understanding of this opinion.

The contract provided for the sale by Clayton to Rogers, of a drug store and its fixtures, the agreed price of the fixtures being two thousand dollars; the drugs and the stock of goods were to be invoiced at cost plus freight; and Rogers, on January 1st, was to pay that price for the stock of goods, and two thousand dollars for the fixtures, which were to be delivered by Clayton to Rogers on the 1st day of January, 1925, on his complying with the conditions.

We quote literally that part of the contract which is sought to be reformed:

"The said Frank Rogers for his part, hereby agrees to take said fixtures hereto listed at the said purchase price mentioned, and the said stock of goods for the purchase price mentioned, and to fully pay for same in cash on the date that same are delivered to him. The trade not being fully consummated until said purchase price is paid. However, as evidence of his good faith, and intention to carry out said trade, and pay said purchase price, hereto he attaches his promissory note in the sum of one thousand dollars, payable to said Shannon Clayton, on the 1st day of January, 1925, which evidences that portion of the purchase price of said business."

It was alleged by Clayton in his bill that the agreement was that the one-thousand-dollar note was not to be a

part of the purchase price, but was to be liquidated damages. His evidence on the trial of the case was to that effect, except that sometimes he said the agreement before the execution of the contract was that the one thousand dollars was to represent liquidated damages, and at another time he said. that the one-thousand-dollar note was to represent a forfeit. Rogers asserted that the contract expressed the agreement as entered into by the parties at the time, and prior thereto, in their final negotiations, only that the one-thousand-dollar note was substituted for one thousand dollars cash, which he was to deposit, and upon his request it was agreed that the note be substituted for the cash as per statement of the contract.

The contract was drawn up by a member of the bar at Ripley, who testified that he drew it at the instance of Rogers on the day before it was signed, and in accordance with Rogers' instructions. The testimony shows that the contract was read over before signing same; that the parties signed it; and after signing the same Clayton said in effect that he wanted to put Rogers on the same footing as he was, and he wanted a note prepared for one thousand dollars for him to sign, payable to Rogers. Nothing was said, according to the lawyer who drew the contract, to Rogers about Clayton executing a note until after the contract had been executed, and the note made no reference to the consideration therefor. No protest by either, nor representation by either as to the contents thereof, nor agreement subsequently that Clayton was expected to execute a note, save Rogers' silence.

The lawyer who drew the contract asked. the parties, as they left, what he should do with the notes, and one of the parties replied:

"If either one of us fail to comply with the contract, the notes become the property of the other fellow."

Rogers breached the contract, and some weeks later Clayton demanded the notes and contract from the law-

yer, and after some hesitation and delay Rogers instructed that they be turned over to Clayton.

We have a case where a contract is plain and unambiguous—a written contract entered into which one party thereto testified expressed the contract intended ·and signed by the parties, while, on the other hand, the one seeking reformation of same said it did not express the agreement of the parties, but should have recited that the note was to be liquidated damages in the event of a breach.

The evidence showed that the stock of goods and fixtures were worth from three thousand five ;hundred to four thousand five hundred dollars. As we view the bill, it was not alleged that there was a mutual mistake made by the parties at the time they entered into the contract, nor was it alleged that the terms of the contract were not understood at the time of execution by both parties. It was not alleged nor proved that there was any effort on the part of Rogers or anybody else to ·deceive or mislead Clayton, nor does he set up any kind of fraud. As we view it, the proof only shows that Clayton understood the contract one way and Rogers understood it another, and the strongest point made here for reformation, or that could be made, was that the recital. that the one-thousand-dollar note was to be a part of the purchase price of the stock of goods, was not advantageous to the seller and did not add anything to the value of the contract from his standpoint, except, perhaps, as showing slight evidence of good faith on the part of the purchaser and maker of the note. But this is beside the mark and certainly does not render the contract ambiguous.

Taking the contract as written, together with the statement of Rogers, and treating the men as being of equal credibility, the preponderance of evidence was in favor of the appellant. Taking the construction put upon the agreement by the appellee, together with the fact that the contract was unusual to some degree, the prepon-

derance of evidence may have been in favor of the appellee.

Relative to the admissibility of proof to vary a written instrument, between the parties, said to change or alter the instrument on account of an alleged mutual mistake, Pomeroy's Equity Jurisprudence (2 Ed.), vol. 5, thus states the rule, and cites many authorities to sustain that rule:

"The authorities all require that the parol evidence of the mistake, and of the alleged modification, must be most clear and convincing, . . . or else the mistake must be admitted by the opposite party.; the resulting proof must be established beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a mere preponderance of the evidence, but only upon a certainty of the error."

There are numerous authorities to the effect that in order to correct a contract the complainant seeking to reform it must prove that a mutual mistake was made by the-parties in the instrument signed by them beyond a reasonable doubt. This court has aligned itself with this line of authorities. Mr. Justice Holden, in the case of *Watson* v. *Owen,* 142 Miss. 676, 107 So. 865, said:

"A party who seeks to reform a written instrument has the burden of proving mutual mistake beyond a reasonable doubt. Parol testimony to reform must be received with 'great caution and distrust' " (citing authorities).

If the written contract did not express the true intention of the parties, then it is obvious from the evidence in this case that the minds of the parties never met in any contract. We have not undertaken to discuss the inaccuracies and inconsistencies in the statement of the two litigants. For instance, Clayton was not certain as to whether the agreement was that the one-thousand-dollar note was to represent liquidated damages or was to be a penalty. On the other hand, Rogers' explanation of the change agreed to from a cash deposit to his note sub-

stituted in lieu thereof is subject to criticism. The proof did not show any damages accruing to Clayton, except that he undertook to say that, if it had not been for this deal, he would have bought Christmas stock and would have made considerable profit. For aught that appears. in this contract, there was nothing to prevent him from buying his Christmas goods and selling them before the invoice date on January 1st, as according to his testimony it was during the Christmas holidays that these goods were to be sold, and if there had been such profit as he testified to on his speculative theory, he could have well afforded to have made his purchases—in fact, have destroyed the Christmas goods left over, as the stock of goods and fixtures was not to be delivered until January 1st, which was after the holiday sales. Equity courts may not make new contracts for parties, and even though same may not be the kind of contract they ought to have made, yet, if the language is plain and unambiguous, it must be shown beyond a reasonable doubt that a mutual mistake was made.

We do not think the evidence in this case establishes to that degree of certainty required that a mutual mistake was made in this case. No damage being proved at all or attempted to be proved, except those speculative, and the bare statement of Clayton that he was damaged one thousand dollars, without any sort of explanation or basis of calculation, we think the bill should have been dismissed.

*Reversed, and decree here.*