446 So.2d 1002 (1984)
GOVERNMENT EMPLOYEES INSURANCE COMPANY
v.
Robert BROWN and Peggy Ann Brown.
No. 53996.
Supreme Court of Mississippi.
February 8, 1984.
Rehearing Denied March 14, 1984.
John L. Hunter, W. Harvey Barton, Cumbest, Cumbest & Hunter, Pascagoula, for appellants.
William M. Rainey, Franke, Rainey & Salloum, Gulfport, for appellee.
Before WALKER, BOWLING and PRATHER, JJ.
PRATHER, Justice, for the Court:
Mississippi Supreme Court Rule 46[1] provides for certification of unsettled substantive *1003 questions of Mississippi law from certain federal courts when the answer will determine the litigation in the federal forum. Such certification procedure permits this Court to render a definitive opinion and provide a controlling precedent for the federal litigation on questions of substantive Mississippi law.
This case was certified to this Court by the United States Court of Appeals, Fifth Circuit to define and construe the "limits of liability" clause under uninsured motorist coverage of motor vehicle liability policy. See Government Employees Insurance Co. v. Brown, 675 F.2d 645 (5th Cir. May 3, 1982).
The certified question of unsettled law is whether the language contained in this specific Government Employees Insurance Company policy under the "limits of liability" clause is sufficiently clear and unambiguous to prevent the aggregation of uninsured motorist coverage and limit liability to $10,000.00, where separate premiums are charged for more than one unit vehicle under a single policy.

I.
The certified statement of facts are as follows:
On December 5, 1979, the Appellants, Robert Brown and his wife, Peggy Ann Brown, were riding in a vehicle owned by Robert Brown and insured by Government Employees Insurance Company. At that time, they were approaching the intersection of Magnolia Street and Howard Street in Moss Point, Jackson County, Mississippi, when they were involved in a collision which took place with an alleged uninsured motorist, Betty J. Battles.
The policy of insurance which the Appellants had in full force and effect on the date of the accident provided, among other things, for payment of damages as a result of the injuries caused by the negligence of an uninsured motorist. While both insureds were involved in the automobile accident, it was Peggy Ann Brown who claimed the more serious injuries as a result of this accident and made a claim that her damages collectable from an uninsured motorist would exceed $30,000.00.
After this demand was made, the Appellees filed a Bill of Complaint alleging as their cause of action 28 U.S.C.A. Section 2201, commonly known as Federal Declaratory Judgment Action. This action was filed on February 25, 1981 to have the United States District Court for the Southern District of Mississippi define and construe the limits of liability clause under the uninsured motorist coverage of this policy.
In conjunction with the filing of the Declaratory Judgment action, the Appellee tendered the sum of $10,000.00 into the registry of the U.S. District Court proposing that this was the total amount of coverage which would be provided under the policy of insurance.
Subsequent to the filing of the Declaratory Judgment action, the Appellants, Peggy Ann Brown and Robert Brown, each filed their own Declaration in the Circuit Court of Jackson County, Mississippi, on or about April 22, 1981. These actions were civil suits naming as Defendants, the uninsured motorist, Betty J. Battles, and the Appellee insurance company, Government Employees Insurance Company.
In conjunction with the filing of these lawsuits in the Circuit Court of Jackson County, Mississippi, the Appellants also filed a Motion to Dismiss the Declaratory Judgment action, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Thereafter, on May 5, 1981, Government Employees Insurance Company filed a Motion for Summary Judgment in the United States District Court based on their Declaratory Judgment action.

*1004 As a result of the hearings on both Motions filed, the United States District Court issued an order dated June 9, 1981, overruling the Brown's Motion to Dismiss and sustaining Government Employees Insurance Company's Motion for Summary Judgment. From that order, Appellants prosecuted their appeal to the Fifth Circuit Court of Appeals. The case was argued on February 4, 1982.
After studying the record, briefs of counsel and the applicable law, the Fifth Circuit Court of Appeals decided that certain unsettled questions of Mississippi law may control the disposition of this appeal.

II.
The provisions of Mississippi Code Annotated section 83-11-101 (1972)[2] contain the requirement of uninsured motorist coverage for Mississippi residents as follows:
No automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than those set forth in the Mississippi Motor Vehicle Safety Responsibility Law, as amended, under provisions approved by the commissioner of insurance... .
The Mississippi Motor Vehicle Safety Responsibility Law, Mississippi Code Annotated section 63-15-11 (Supp. 1982) now requires minimum liability coverage of $10,000.00 per person injured and an aggregate limitation of $20,000.00 per accident.
The amount of coverage available to an insured under the uninsured motorist statute has given rise to much litigation. A motorist is often covered under the uninsured provisions of more than one policy or, in the case of a single policy, by premiums for multi-vehicular coverage. By "stacking" the coverages under different policies or on different vehicles, the injured party may "aggregate" the amounts of coverage up to the amount of damage sustained.
The aggregation of claims, or stacking, has been permitted in certain situations to provide the insured with the difference between the minimum statutory requirement of uninsured coverage and the total amount of a judgment against an uninsured defendant. Harthcock v. State Farm Mutual Automobile Ins. Co., 248 So.2d 456 (Miss. 1971) (allowing aggregation of coverage of plaintiff as a passenger on uninsured motorcycle with plaintiff's own vehicle). Southern Farm Bureau Casualty Ins. Co. v. Roberts, 323 So.2d 536 (Miss. 1975) (allowing aggregation of coverage from three separate uninsured motorist policies on three separate vehicles owned by insured). Hartford Acc. & Indem. Co. v. Bridges, 350 So.2d 1379 (Miss. 1977) (allowing aggregation of coverage on an intra-policy for which a separate premium was charged and paid on each vehicle). Pearthree v. Hartford Acc. & Indem. Co., 373 So.2d 267 (Miss. 1979) (allowing aggregation of coverage from multiple premiums under one policy).[3]Contra: Talbot v. State Farm Mutual Automobile Insurance Co., 291 So.2d 699 (Miss. 1974) (the limitation clause was clear and unambiguous and therefore stacking was denied).
Insurance companies in defending these cases have asserted as their defense the contractual provisions of the policies. Harthcock, supra. ("other insurance" clause). Talbot, supra. ("limits of liability" clause).
Inter alia, the policy in question contains the following provision as to the limitation of liability for uninsured motorist coverage:
Regardless of the number of automobiles or trailers to which this policy applies, the limit of liability for uninsured motorist *1005 coverage stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident; and, subject to the above provisions respecting each person, regardless of the number of automobiles or trailers to which this policy applies, the limit of liability stated in the declarations as applicable to `each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as a result of any one accident.
Further, the policy shows a declaration sheet describing three vehicles owned by the parties and covered under the single policy with itemized statements of premiums charged for each vehicular unit. The declaration sheet is here attached as Exhibit "A".
The language of limitation interpretated in Bridges, supra, is similar to the case sub judice. In Bridges, however, this Court held the language to be ambiguous and difficult to understand. Because of this ambiguity of language seeking to limit the liability of the insurer, the Court permitted the aggregating of coverages. The policy sub judice contains additional language to clarify the limitation in the words "Regardless of the number of automobiles or trailers to which this policy applies... ." We are called upon now to interpret this language by the test of ambiguity.

III.
In Mississippi, cases concerning one policy coverage of multi-vehicular units has been addressed. Our early case of Talbot v. State Farm Mutual Automobile Ins. Co., 291 So.2d 699 (Miss. 1974) involved a single policy of automobile insurance covering more than one vehicle with a clear and unambiguous limitation on coverage of uninsured motorists. In this decision, our court denied aggregation of coverage in a five-four opinion.
Further, the Talbot dissent, authored by Justice Broom, rests in part upon the purchase of "plural coverages" on all vehicles, and asserted that the insured was entitled to all coverages for which a premium had been paid to the full amount of the insured's damage.
A more mature reflection of the legislative intent of the uninsured motorist statute and of a more seasoned analysis of the problem was decided in the case of Hartford Acc. & Indem. Co. v. Bridges, supra.
Expressing the latest pronouncement of the issue in question, Justice Inzer opined for the Court:
The Supreme Court of this State, ... seems to place greater emphasis upon the fact that a separate premium is charged and paid for uninsured motorist coverage for more than one vehicle, whether coverage is provided in one or in several contracts of insurance. There is persuasion to the argument that the insured paid for this coverage, and accordingly, should be entitled to it, limited only by the amount of damages which may be judicially determined. (350 So.2d at 1381).
Further, Bridges, supra, analyzed the former Talbot decision of this Court and concluded that Talbot held that an insurance company may limit its uninsured motorist coverage in one policy to the minimum amount if it is done by clear and unambiguous language. Justice Inzer correctly surmised that Talbot was not correctly decided in view of our more recent decisions.
An inconsistent result may occur from our holding in Talbot and subsequent cases of multi-vehicular ownerships on a single policy. For example, an owner of multi-vehicles may secure separate policies and obtain aggregation of uninsured motorist coverage under each policy.
However, Talbot, supra, suggests that aggregation of uninsured motorist coverage would not be permitted where one policy, although charging separate premiums, limited the insurer's liability to the minimum *1006 statutory amount if the limitation was in clear and unambiguous language. In the latter situation aggregation would not be permitted. This variance in application is unwarranted.
The Bridges decision now appears to be the better reasoned holding and we now adopt its rationale and expressly abandon the Talbot rationale. Talbot v. State Farm Mutual Automobile Insurance Co., 291 So.2d 699 (Miss. 1974). We reiterate from Bridges that a presumption arises that coverage of multi-vehicles in one policy, where separate premiums were paid for each endorsement of uninsured motorist coverage, is the same as if such coverage was provided in separate policies covering the same vehicles. Any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid. We now adopt the reasoning set forth in Justice Broom's dissent in the Talbot case and apply the theory that recovery cannot be limited by an insurer for benefits for which a premium is paid by an insured, notwithstanding clear and unambiguous language of attempted limitation by the insurer. Notwithstanding, this Court still recognizes the general principle that in any insurance contract, unclear and ambiguous language will be construed in favor of the insured.
We conclude in the instant case that aggregation of coverages shall be permitted on two distinct theories. First, uninsured motorist coverage contained in one policy of insurance insuring three vehicles, and for which a separate premium was paid, can be aggregated. Secondly, while the language within the "limits of liability" clause is clear and unambiguous as to what is intended, when read together with the declaration sheet it becomes unclear and ambiguous. The declaration sheet seeks to provide separate coverages for uninsured motorist on three vehicular units and charge separate premiums therefor while the "limits of liability" clause seek to repudiate such coverage. On either theory, the limitation fails.
The certified question is answered by this Court by stating that the policy language under the "limits of liability" clause when read together with the declaration sheet is unclear and ambiguous and is therefore void. Also, aggregation of uninsured motorist coverage shall be permitted because plural premiums were charged.
It is therefore ordered that this opinion be certified by the Clerk of this Court to the Clerk of the Court of Appeals for the Fifth Circuit as this Court's answer to the certification request.
CERTIFICATION QUESTION ANSWERED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and ROBERTSON, JJ., concur.

*1007 EXHIBIT "A"

NOTES
[1] When it appears to the Supreme Court of the United States, or to any circuit court of appeals of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Mississippi for rendition of a judgment or opinion concerning such questions or propositions of Mississippi law. This Court may in its discretion, decline to answer the questions certified to it. Ordered the 1st day of August, 1980.
[2] This section was amended in 1982, but such provisions are not applicable here.
[3] Phillips, A guide To Uninsured Motorist Insurance Law in Mississippi, 52 Miss.L.J. 255, 285 (1982).