**Juanita BALL, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

No. EC86-250-S-D.

United States District Court, N.D. Mississippi, E.D.

April 13, 1988.

William Liston, Jessica S. Upshaw, Jerry Read, Liston/Lancaster, Winona, Miss., Charles T. Yoste, Starkville, Miss., for plaintiff.

Ralph E. Rood (Counsel of Record Until 6/14/88), DeWitt Hicks, Jr., Columbus, Miss., L.F. Sams, Jr. (Counsel of Record from 7/15/88), John S. Hill, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for defendant.

OPINION

SENTER, Chief Judge.

This cause comes before the court on cross-motions for summary judgment. For the reasons set forth below, the court finds that the plaintiff's motion for summary judgment is well taken and should be granted. For the reasons set forth below, the court finds that defendant's motions for summary judgment on the issues of stacking and punitive damages are not well taken and should be denied.

*Facts*

The facts alleged in this cause are as follows: On April 1, 1985, defendant United States Fidelity & Guaranty Company (hereinafter USF & G) issued a garage policy to Charles P. Ball trading as Stark-

ville Tractor and Equipment Company. The garage policy provided coverage for liability insurance on "any auto," uninsured motorists' insurance on autos owned by Mr. Ball or acquired subsequent to issuance of the policy and comprehensive and collision insurance on specifically described automobiles. Four automobiles were specifically listed on the policy: two 1977 Mercurys, a 1975 Ford F100 pickup, and a 1974 Ford van.

The initial listing of vehicles was in error, as one 1977 Mercury station wagon had been traded for a 1980 Lincoln, and the 1975 pickup and the other 1977 Mercury had been replaced by 1978 and 1979 Ford pickup trucks.

The policy also provided an automotive medical pay provision in the amount of $500.00. A premium of $57.00 was paid for this coverage. Mrs. Ball was an insured under this provision of the policy.

The declarations page of the policy states that the limit for uninsured motorist insurance is $25,000.00, and that the premium for this coverage is $40.00. The declarations page further states: "This Declarations must be completed by the attachment of a supplementary schedule." The supplementary schedule lists a $10.00 premium beside each of the four covered vehicles, totaling to the $40.00 premium on the declarations page. The premiums listed for each individual item of coverage on the supplemental schedule correspond in amount to the premiums for the same items of the declarations page.

The uninsured motorist endorsement provides under the heading "E. Our Limit of Liability" that:

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

The sum of $25,000.00 is on the declarations page under the column titled "Limit— The most we will pay for any one accident or loss" in the row titled "UNINSURED MOTORIST INSURANCE."

On December 6, 1985, Mrs. Juanita Ball was involved in a motor vehicle accident while driving the 1980 Lincoln. Mrs. Ball was seriously injured in this accident and incurred medical expenses in excess of $100,000.00. The party at fault in this accident, John E. Williams, was insured for the sum of $10,000.00 per person and $20,000.00 per accident.

Williams' insurer, Allstate Insurance, tendered to Mr. Ball a draft of $10,000.00 (the maximum available coverage under Williams' policy) conditioned upon Ball executing a full release in favor of both Allstate and its insured. Mr. Ball states that the adjusters for Allstate suggested to him that he might have a claim on his uninsured motorist carrier and that stacked coverage might be available because his uninsured motorist policy covered multiple vehicles.

Mr. Ball alleges in his deposition that Mark Leonard, an adjuster for USF & G, contacted him at his place of business before he had made a formal request for payment from his insurance agent. Ball states that he asked whether stacking of the uninsured motorist coverage would be available and whether he was due any other coverage under the policy. Leonard then discussed the situation with Assistant Supervisor Troy Barnes. Based upon this discussion with Barnes, Leonard told Ball that stacking would not be available because the policy explicitly stated that it would pay no more than the $25,000.00 limit of coverage and because the policy was commercial in nature. Leonard did not inform Ball that the contract provided medical pay coverage. Mr. Ball states that Leonard had another adjuster visit him shortly thereafter. The second adjuster also stated that stacked coverage would not be available. On February 14, 1986, Ball submitted a loss notice to USF & G. About that time, Ball hired counsel. Leonard contacted counsel for USF & G. USF & G's counsel agreed with the position Leonard and Barnes had taken denying stacking of uninsured motorist coverage on the garage policy.

On March 25, 1986, USF & G tendered Ball a check for $15,000.00 on condition that the Balls execute in USF & G's behalf a Release, Agreement and Release, Covenant Not to Sue, and Subrogation Receipt. The Subrogation Receipt provided that the Balls subrogated, assigned, and transferred to USF & G "any and all claims or causes of action" which they had against any person, firm, or corporation liable for the loss sustained in the motor vehicle accident on December 6, 1985.

Thereafter, Ball had numerous conversations with his insurance agent, William Polk. In some of these conversations, he communicated that he was not going to negotiate the $15,000.00 draft from his uninsured motorist coverage because he was entitled to additional coverage. Ball made one or more specific requests for payment under the medical pay coverage.

On May 21, 1986, USF & G tendered the $500.00 in medical insurance payments. Shortly thereafter, the Balls deposited the medical pay draft. On June 4, 1986, USF & G issued stop pay notices on both the underinsured motorist draft and the medical pay draft. No advance notice of the stop pay order was given to the Balls. The Balls' bank returned the medical pay draft because payment had been stopped. On June 13, 1986, USF & G notified Ball's counsel that stop pay notices had been issued. Suit was initiated in the Circuit Court of Oktibbeha County on July 17, 1986. The action was subsequently removed to this court. Jurisdiction exists in this court under 28 U.S.C. § 1332. Payment on the medical pay coverage was tendered and accepted on December 5, 1986.

### Standard for Summary Judgment

Fed.R.Civ.P. 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is genuine if it "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A fact is material if its establishment determines the outcome under the substantive law. *Id.*

To prevail, the moving party must show the lack of a genuine issue of material fact by "informing the district court of the basis for its motion, and identifying those portions of [the summary judgment evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the motion should be granted unless the nonmoving party shows that there is a genuine issue of fact as to an essential element of the claim on which judgment is being sought. *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986). The nonmoving party's burden is lessened by the requirement that the trial court draw the inferences most favorable to the party opposing the motion. *Harrison v. Byrd*, 765 F.2d 501 (5th Cir.1985). Summary judgment is therefore inappropriate "where there is genuine disagreement as to the reasonable inferences to be drawn from undisputed facts." *Fischbach and Moore, Inc. v. Cajun Electric Power Cooperative, Inc.*, 799 F.2d 194 (5th Cir.1986).

### Stacking

USF & G contends that Mississippi law does not permit stacking on garage policies. USF & G argues that while the Supreme Court of Mississippi ruled that stacking was permissible in *Government Employees Insurance Co. v. Brown*, 446 So.2d 1002 (1984), the holding of the court was limited to personal automobile insurance policies by the court's statement that "The certified question at law is whether the language contained in the specific Government Employees Insurance Company policy under the 'limits of liability' clause is sufficiently clear and unambiguous to prevent the aggregation of uninsured motorist coverage...." USF & G

notes that all subsequent cases before that court on uninsured motorist stacking have also involved personal automobile policies.

USF & G further contends that the public policy of Mississippi should prevent stacking since (1) garage policies cover a foreseeably unlimited number of automobiles for a single premium and (2) the named insured under a garage policy should be held to a higher standard of understanding of the transaction.

USF & G misconstrues the holding in *Brown.* Writing for a unanimous court, Justice Prather stated:

> [A] presumption arises that coverage of multi-vehicles in one policy, where separate premiums were paid for each endorsement of uninsured motorist coverage, is the same as if such coverage was provided in separate policies covering the same vehicles. Any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid.... Recovery cannot be limited by an insurer for benefits for which a premium is paid by an insured, notwithstanding clear and unambiguous language of attempted limitation by the insurer.

The Mississippi Supreme Court clearly established a *per se* rule that the payment of separate premiums for uninsured motorist coverage on multiple vehicles in an insurance policy entitles the first class insured to stack the uninsured motorist coverage. Neither the language of the court in

*Brown* nor that of the statute[1] requiring uninsured motorist coverage is in any way restricted to personal automobile policies.[2]

USF & G's contention that stacking on a garage policy would open the insurer to unlimited liability for the payment of a single small premium is erroneous for two reasons. First, *Brown* applies only where more than one premium is charged for uninsured motorists coverage. The amount of coverage which may be stacked would be limited under the main holding in *Brown* to the number of premiums paid.[3] Second, Miss.Code Ann. § 83–11–101(1) restricts the stacking by providing that "uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured...." Miss.Code Ann. § 83–11–101(2) contains an identical provision as to property damage. Consequently, liability under the policy is limited to the lesser of the uninsured motorist coverage times the number of premiums paid or the amount of bodily injury and property damage liability coverage. This is not unlimited exposure. Whether this USF & G policy permits stacking depends on whether multiple premiums were charged and not upon the type of policy.

### *Multiple Premiums Were Charged by USF & G*

USF & G contends (1) that the page labeled "declarations" is the only page of the declaration and (2) that the $40.00 pre-

---

1. Uninsured motorist coverage is required by Miss.Code Ann. § 83–11–101 (Supp.1987). This section reads: *"No* automobile liability insurance policy or contract shall be issued or delivered after January 1, 1967, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages...." (Emphasis added.)

2. The court in *Brown* held in the alternative that stacking would be permitted where the language of limitation was ambiguous or where otherwise unambiguous language of limitation was rendered ambiguous by the charging of separate premiums for each vehicle. In light of the remainder of the opinion in *Brown,* this alternate holding merely repeats and amplifies the primary holding of the case: If multiple premiums are charged, the clearest and least ambigu-

ous of drafting in a limitation provision will not prevent stacking. USF & G's contention, grounded upon this alternative holding that the insured in a commercial policy should be held to a higher standard, must fail. In *Berry v. Aetna Casualty and Surety Company,* 607 F.Supp. 397 (S.D.Miss.1985), *aff'd,* 787 F.2d 586 (5th Cir.1986), Judge Lee held that stacking would be available to General Motors Acceptance Company as a first class insured but was not available to the individual as a second class insured. *Id.* at 398.

3. The alternative holding might permit stacking in other situations (multiple covered persons involved, etc.) where multiple premiums were not charged. However, the second limitation discussed *infra* would appear equally applicable in such circumstances.

mium reflected on that page is a flat premium. Ball notes that the page labeled "declarations" contains a bold print statement: "This declarations must be completed by the attachment of a supplementary schedule." Ball contends that the supplementary schedule must be considered as part of the declaration. Ball further notes that the supplementary schedule clearly reflects that a separate $10.00 premium was charged for each vehicle covered by the policy, the total of which was entered on the declarations page.

It is well settled that where a contract is unambiguous, the contract interpretation becomes a matter of law. *Dennis v. Searle*, 457 So.2d 941 (Miss.1984). Here the declarations page plainly states: "This declarations must be *completed* by the attachment of a supplementary schedule." (Emphasis supplied.) "Completed" means "to make whole, entire, perfect." Webster's Third New International Dictionary (G. & C. Merriam Co. 1971). The use of the word "completed" clearly contemplates that the supplementary schedules are part of the declarations and must be considered as such.

Next, USF & G argues that if the supplementary schedule is considered part of the declarations, the schedule cannot be considered in connection with uninsured motorist coverage. USF & G contends that the supplementary schedule details coverage only for specifically covered automobiles. Items covering these specific automobiles are indicated on the declarations page with the symbol "27." [4] Uninsured motorist coverage is designated with the symbol "22." [5] USF & G contends that item 11, the supplementary schedule which lists the covered autos, cannot be considered in connection with any coverage not coded "27." Ball notes that item 11 of the supplementary schedule lists the uninsured motorist

coverage within the schedule and indicates separate premiums for each vehicle on that schedule.

USF & G's contention is not well taken. Symbol "27" clearly indicates that only those vehicles listed in item 11 will be covered under the applicable coverage. It does *not* indicate that the coverage described under item 11 applies only to specifically covered vehicles. An examination of the Declarations and the Supplementary Schedule shows that each premium listed on the Declaration has a corresponding entry on the supplementary schedule and that items with codes other than "27" are included on item 11. For example, the $1,618.00 premium for liability insurance corresponds to the sum of the $1,593.00 premium listed under "Item Five *Liability Insurance—Premiums*" and the $25.00 premium listed under "Item 11 *Schedule of Covered Autos Which Are Furnished to Someone Other Than a Class 1 or Class 11 Operator or Which are Insured on a Specified Car Basis*" and which is listed in a column labeled Liab. Liability coverage is indicated with symbol "21" on the declarations page.

■ Moreover, an examination of the supplementary schedule for an entry specifically applicable to symbol "22" shows that the section for uninsured motorist coverage labeled "Item Ten—*Uninsured Motorist Insurance Premiums*" has no entry. The caption to that section states "Refer to Item Eleven for Separately Registered Covered Autos." Under Item 11, under the heading "U.M.," the schedule reflects four $10.00 premiums with a total premium of $40.00. The court concludes that Item 11 from the supplementary schedule must be read with the declarations page and that the contract required the payment of four separate premiums of

**4.** Symbol 27 covers "SPECIFICALLY DESCRIBED AUTOS. ONLY THOSE AUTOS DESCRIBED IN ITEM EIGHT of the Non–Dealers' and Trailer Dealers' Supplementary Schedule or ITEM ELEVEN of the Dealers Supplementary Schedule for which a premium charge is shown (and for liability coverage any trailers you don't own while attached to a power unit described in ITEM EIGHT or ITEM ELEVEN)."

**5.** Symbol 22 covers "OWNED AUTOS ONLY. Only those autos you own (and for liability coverage any trailers you don't own while attached to power units you own). This includes those autos you acquire ownership of after the policy begins."

$10.00 each for uninsured motorist coverage. Applying *Brown,* the court finds that the uninsured motorist coverage in the policy which USF & G issued to Charles P. Ball, trading as Starkville Tractor and Equipment Company, is subject to stacking.

### *"Bad Faith" Refusal*

Defendant USF & G has moved for summary judgment on the issue of punitive damages for a "bad faith" refusal to pay.

The law of Mississippi permits an award of punitive damages against an insurance company for the breach of an insurance contract if that breach is "attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort." *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 398 (Miss.1975). The court has subsequently restated this standard for the imposition of punitive damages many times.

> [T]he substantive test for awarding punitive damages is the same in bad faith refusal cases as in any other case where punitive damages are sought. That test requires the plaintiff to show some willful or malicious wrong or the gross or reckless disregard for the rights of others.

*Weems v. American Security Ins. Co.,* 486 So.2d 1222, 1226–27 (Miss.1986). *See also Mutual Life Insurance Co. of New York (MONY) v. Wesson,* 517 So.2d 521 (Miss. 1987); *Blue Cross and Blue Shield of Mississippi, Inc. v. MAAS,* 516 So.2d 495 (Miss.1987); *Aetna Casualty and Surety Co. v. Day,* 487 So.2d 830 (Miss.1986).

However, punitive damages will not lie if an insurance company has "a legitimate or an arguable reason for failing to pay a claim." *Standard Life Insurance Co. v. Veal,* 354 So.2d 239, 248 (Miss.1977).

Subsequent decisions have clarified what constitutes a "legitimate or arguable reason." Justice Robertson noted in a separate opinion in *Blue Cross and Blue Shield of Mississippi v. Campbell,* 466 So.2d 833 (Miss.1984), that:

> An arguable reason is one in support of which there is some credible evidence.

There may well be evidence to the contrary. A person [or insurer] is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he [or it] acts. *Id.* at 851.

This issue is before the court on summary judgment. The court has noted above that the court must draw those inferences most favorable to the party opposing the motions. *Harrison v. Byrd,* 765 F.2d 501 (5th Cir.1985). The plaintiff contends that USF & G has acted in bad faith in three respects. First, she contends that the limitation of the initial $25,000.00 of uninsured motorist coverage to $15,000.00 based on a conditional offer of $10,000.00 from Allstate was unreasonable because it shifted from USF & G to the insured the burden of collecting from the uninsured motorist. Second, she contends that the refusal to stack benefits was unreasonable. Third, plaintiff contends that USF & G failed to disclose the existence of the medical pay claim and that USF & G attempted to hold the medical pay coverage hostage to force the plaintiff to accept USF & G's interpretation of the limits of coverage under the uninsured motorists provisions.

■ Upon examination of the facts alleged, the court concludes that there is genuine disagreement over the reasonable inferences to be drawn over USF & G's actions in tendering only $15,000.00 to Ball from a $25,000.00 policy, in refusing stacking in the face of *Brown's per se* rule regarding the payment of multiple premiums, and in stopping payment on the medical payment check without prior notice to the payee. Accordingly, the court denies the defendant's motion for summary judgment on this issue.

An order in conformance with this opinion shall issue.