Robert PRIDE, Plaintiff,

v.

GENERAL AGENTS INSURANCE COMPANY OF AMERICA, INC., Defendant.

No. DC87–119–S–D.

United States District Court,
N.D. Mississippi,
Delta Division.

Aug. 5, 1988.

Charles Baglan, Baglan, Bailey & Henning, Batesville, Miss., for plaintiff.

Michael D. Greer, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

This matter is before the court on the defendant's motion for partial summary judgment. The plaintiff, Robert Pride, alleges that he was injured as a result of being struck by a car driven by an uninsured motorist. He filed a claim with the defendant, General Agents Insurance, under his garage policy which provides uninsured motorist coverage. He claims entitlement to $220,000.00 in uninsured motorist benefits.

Mr. Pride owns a used car dealership and an automobile garage. He purchased an insurance policy to cover property damage to the cars which his customers would bring into the garage as well as the cars which he kept for sale on his lot. This policy also provided liability insurance and uninsured motorists coverage. General Agents does not deny that a valid, enforceable insurance contract exists. It does, however, deny that uninsured motorist (U.M.) coverage is available to the plaintiff under the facts of this case. The company also argues that even if U.M. coverage is available, its liability is limited to either $10,000.00 or $80,000.00. It is this latter issue which the defendant seeks to have resolved by summary judgment.

The policy at issue provides automobile physical damage coverage, garage insurance, and U.M. coverage. The garage insurance provides scheduled liability coverage of $100,000.00 per occurrence for bodily injury and property damage to customer's automobiles stored on the plaintiff's lot. This portion of the policy also provides liability coverage for two service vehicles. The policy shows a maximum number of customer's automobiles stored as twenty. The U.M. coverage schedule shows coverage of $10,000.00 per person/$20,000.00 per occurrence for bodily injury and $5,000.00 per occurrence for property damage. It also provides that an insured motor vehicle for U.M. purposes is one to which a dealer's license plate is attached. The policy also purports to limit total U.M. liability to the scheduled amounts— 10/20/5. A flat premium of $192.00 was listed in the schedule.

## I. AMOUNT OF UNINSURED MOTORIST COVERAGE

The plaintiff argues that there are twenty-two U.M. coverages which may be stacked in his favor under this policy—one for each of the twenty stored customer's vehicles and one for each of the two service vehicles. The defendant argues that there is only $10,000.00 in U.M. coverage available or, in the alternative, that the plaintiff had U.M. coverage on each of the eight cars with dealer's plates and may stack those for a maximum of $80,000.00 in coverage.

### A. Stacking of U.M. Coverages in the Context of a Commercial policy.

In its initial brief, the defendant argued that stacking should not be allowed in a

commercial policy. Shortly thereafter, this court rendered its opinion in another case holding that neither the language of the Mississippi statute nor the policy behind it restricted its application to policies covering privately owned, noncommercial vehicles. *Ball v. United States Fidelity & Guaranty Co.*, 696 F.Supp. 1117 (N.D. Miss.1988). This court then held that, at least where multiple premiums were charged, the rationale of *Government Employee's Insurance Co. v. Brown*, 446 So. 2d 1002 (Miss.1984), applied to commercial liability policies. The holding in *Ball* is dispositive of this issue *if* that holding extends to cases in which a single premium is charged.

B. Stacking of U.M. Coverages Where Only One Premium is Charged.

In *Brown*, the Mississippi Supreme Court listed two alternative bases for allowing stacking of uninsured motorist coverages contained in a single policy of insurance which purports to limit such coverage. First, any ambiguity in the language of the policy must be resolved in favor of the insured. Where a policy attempts to limit the amount of uninsured motorist coverage but the limiting language is ambiguous on its face or is rendered ambiguous by other language in the policy, the ambiguity will be resolved in favor of the largest amount of coverage which the language will reasonably support. *See, e.g., Hartford Accident & Indemnity Co. v. Bridges*, 350 So. 2d 1379 (Miss.1977). The second ground for stacking occurs "where separate premiums were paid for each endorsement of uninsured motorist coverage." *Brown*, 446 So.2d at 1006. Stacking is allowed in this latter situation even if the policy contains unambiguous language attempting to limit the U.M. coverage to a specific amount. *Id.*

In *Brown*, the court reaffirms its earlier holding that

when a separate premium is charged for uninsured motorists coverage it raises a presumption or inference that the coverage in the one policy is the same as would be furnished if such coverage was provided for in separate policies covering the same vehicle.

*Hartford Accident & Indemnity Co. v. Bridges*, 350 So.2d 1379, 1381 (Miss.1977).

It is well settled in Mississippi that an insured may aggregate coverages of separate U.M. policies on separate vehicles owned by the insured. *See, e.g., Southern Farm Bureau Casualty Ins. Co. v. Roberts*, 323 So.2d 536 (Miss.1975).

In the case at bar, there is only one policy. That policy purports to provide U.M. coverage with scheduled liability limits of $10,000.00 per person, $20,000.00 personal injury per occurrence, and $5,000.00 property damage per occurrence. This is the statutorily prescribed minimum. The policy defines an insured motor vehicle for U.M. coverage purposes to be "any automobile to which are attached dealer's license plates issued to the named insured."[1] Immediately to the right of this definition, someone has typed in the following: "8 Dealer Plates". Below this is the declaration of coverage for uninsured/underinsured motorists which expressly limits the company's liability as follows:

Regardless of the number of (1) persons or organizations who are Insureds under this insurance, (2) policies or bonds applicable, (3) claims made or suits brought on account of bodily injury or property damage, or (4) motor vehicles to which this insurance applies:

(a) The limit of bodily injury liability stated in the schedule as applicable to

---

1. The plaintiff contends that an insured motor vehicle for U.M. purposes is any automobile to which the liability portion of the policy applies. In support of this contention, he cites the following language from the U.M. coverage declarations page: " 'Insured motor vehicle' means an automobile ... to which the bodily injury and property damage liability coverage of the policy applies." The problem with this argument is that the portion of the definition left out of the above quote utterly destroys it. The omitted portion of the definition limits the vehicles defined to be insured for U.M. purposes to "those described in the schedule as an insured automobile." The schedule clearly describes as insured vehicles for U.M. purposes only those vehicles bearing one of the eight dealer license plates.

"each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence....

A clearer statement of limitation of liability is hard to imagine. The limitation language used in this policy differs only slightly from that found to be unambiguous on its face in *Brown*.[2] The question then is whether the fact that there were eight insured vehicles coupled with the company's admission that the $192.00 premium was calculated based on eight insured vehicles brings this policy within the spirit of the second ground for stacking coverages expressed in *Brown*.

The Mississippi Supreme Court has never directly addressed the issue presented by this case. Being *Erie*-bound to sit as a trial court of the State of Mississippi and apply its substantive law, this court must do its best to predict the resolution that a Mississippi court would reach in this case. *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 396–97 (5th Cir.1986). In making this *Erie* guess, an assessment of the reasoning behind the allowance of stacking of U.M. coverages is helpful. If the "separate premiums are presumptively treated as separate policies" rule from *Bridges* is based on the ambiguity created by contrasting a declarations page which lists separate premiums for U.M. coverages on multiple vehicles with a clause purporting to limit liability to only one U.M. coverage, then the listing of only one premium would destroy the rationale and avoid stacking. In such a case, there would be no ambiguity to resolve in favor of the insured. On the other hand, it could be that the *Bridges'* rule is based on the notion that the payment of separate premiums gives rise to a presumption that the company is collecting for separate coverages and the injured insured ought to get the benefit of all the coverages he has paid for. If this is the basis for the rule, then the fact that only one lump-sum premium is

listed on the declarations page would not necessarily defeat stacking of coverages. The relevant inquiry would be whether the company had charged and the insured had paid for multiple coverages. In other words, if stacking is intended to provide that the insured gets what he has paid for, the company should not be allowed to prevent him from doing so by listing only one premium when that premium is actually the aggregate of charges for multiple U.M. coverages.

The resolution of this question of the basis for the "separate premiums are presumptively treated as separate policies" rule may be found in *Brown*. As pointed out earlier, the court held in that case that there are two separate, alternative grounds for allowing stacking in the single policy, multiple premium, multiple vehicle case: (1) that the conflict between the limitation clause and the declaration page created an ambiguity which must be resolved in the insured's favor, and (2) that separate premiums were paid for each of the three vehicles. *Brown*, 446 So.2d at 1006. It is clear that the payment of separate premiums, by itself, gives rise to a presumption in favor of stacking. Payment of separate premiums is a separate ground, entirely independent of any ambiguity caused by the listing of separate premiums. By stating these two as alternative grounds, the court makes it clear that the rationale behind the "separate premiums are presumptively treated as separate policies" rule is something other than the ambiguity created by the separate listing of premiums.

In *Brown*, the court states that it is adopting the reasoning "set forth in Justice Broom's dissent in" *Talbot v. State Farm Mutual Automobile Insurance Co.*, 291 So.2d 699 (Miss.1974). In *Talbot*, a majority of the court had held that when the policy contains unambiguous language limiting its U.M. liability, that limitation is effective even though the policy covers more than one automobile and a separate

---

**2.** The ambiguity recognized in *Brown* was caused by the fact that the limitations clause

appeared to conflict with the declarations page

premium is charged for each one.[3] Writing for four members of the court, Justice Broom argued in dissent that

> It seems most incongruous to permit [the insurer] to avoid its statutory liability by simply inserting into the policy an ambiguous limiting clause precluding the insured from receiving that coverage for which he paid the premium charged. *Since a premium has been paid for each of the endorsements and coverage has been issued, it is reasonable and equitable to allow [the insured] to recover under more than one endorsement to the extent of his damages.* Such a result does not allow the insured to "obtain a windfall." *He contracted and paid for the "coverages."*

*Talbot,* 291 So.2d at 705. (Emphasis added.)

This idea that stacking allows the injured insured the benefit of what he has paid for is a recurring theme in the Mississippi cases.

> [T]he fact that the legislature required an uninsured-motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policyholder's receiving what he paid for on each policy, up to the full amount of his damages. It is true that such holding results in permissible recovery exceeding what he would have received if the uninsured motorist had been insured for the minimum amount required under our Safety Responsibility Act. But if the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium.

*Southern Farm Bureau Casualty Insurance Co. v. Roberts,* 323 So.2d 536, 538

which purported to provide three separate coverages. *Brown,* 446 So.2d at 1006.

**3.** In *Bridges,* the court distinguishes *Talbot* by saying that *Talbot* involved a lump sum premium. *Bridges,* 350 So.2d at 1381. This is true in the sense that the court there uses the phrase "lump sum". The policy showed separate premiums for each of four cars, but did not break

(Miss.1975) [quoted entirely from *Van Tassel v. Horace Mann Mutual Insurance Co.,* 296 Minn. 181, 207 N.W.2d 348, 351–52 (1973) ].

In *Bridges,* the court found that there was "persuasion to the argument that the insured paid for this coverage, and accordingly, should be entitled to it, limited only by the amount of damages which may be judicially determined." *Bridges,* 350 So.2d 1379.

■ Though the Mississippi Supreme Court has said that it is possible for an insurer to limit his U.M. coverage liability by clear and unmistakable language, it is clear that that court does not intend to allow the company to do so when a premium is charged which is based on more than one U.M. coverage. Where separate premiums for the separate coverages are charged, a presumption arises that this single policy should be treated as separate policies. This court can find no reason for allowing an insurance company to do by the use of a single lump-sum premium what it could not do if it broke the lump sum charge down into separate, per vehicle premiums. In other words, if the Mississippi Supreme Court intends to make sure that the insured gets all of the coverage that he had paid for, that court surely would not allow insurance companies to defeat that intention by the simple expedient of combining the costs of several U.M. coverages and stating them as a single premium. However, the presumption created in *Bridges* and reiterated in *Brown* may not be relied upon where there is a single premium, so the insured would be required to prove that the single premium charged was actually the sum of the premiums which would be due for eight separate U.M. coverages.

these premiums down into amounts attributable to personal injury and property damage liability and uninsured motorist coverages. There were actually four different lump sums. *Tablot,* 291 So.2d at 702. In any event, *Talbot* is clearly overturned by the Supreme Court in *Brown* when the court says "we ... expressly abandon the *Talbot* rationale." *Brown,* 446 So.2d 1006.

■ In the instant case, it is admitted by the company that the premium was calculated based on eight U.M. insured vehicles. This does not resolve the question of the number of U.M. coverages available to Pride. A company could calculate a premium based on the fact that the risk of occurrence of a covered loss was heightened by the fact that each of eight different vehicles was insured against property damage caused by an uninsured motorist, without actually charging the rough equivalent[4] of eight separate premiums. One of the issues remaining to be decided at trial is what exactly is meant by the company's admission that the calculation of the single premium was based on there being eight insured vehicles for U.M. purposes.

C. Does the Statute Require That Uninsured Motorist Coverage Be Provided For Every Automobile Covered Under a Liability Policy?

■ The plaintiff's argument that there are twenty-two U.M. coverages available to him is based on the fact that at the time he applied for this garage policy, he had twenty cars stored on his lot and two service vehicles, all of which were covered under his garage owners liability policy.

As noted earlier, the Mississippi Supreme Court has repeatedly said that an insurer, through the use of unambiguous language, may limit its U.M. exposure. In the present case, this court is holding that such an unambiguous limitation is effective only when the insurer charges a premium that is calculated so that the limited coverage is all that the insured is paying for. Given the fact that the state court continues to insist that such a limitation is possible in policies covering multiple vehicles, it is clear that the State Supreme Court does not interpret the statute as requiring that every automobile that is an insured vehicle for liability purposes also be an insured vehicle for U.M. coverage purposes. The plain language of the statute does not require such a result. The statute provides

only that "no automobile liability insurance policy ... shall be issued ... unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover ... from the owner ... of an uninsured motor vehicle." Miss.Code Ann. § 83–11–101(1) (1980). This provision requires only that each liability policy provide some U.M. coverage to the insured(s). It does not require that U.M. coverage be provided on each of several vehicles for which liability coverage is provided under a single policy.

D. Summary.

In summation, the defendant's motion for partial summary judgment on the issue of the amount of its potential liability to the plaintiff is denied to the extent that it seeks a determination that its exposure is limited to the statutory minimum of $10,000.00. For the reasons discussed above, General Agents has not shown that it is entitled as a matter of law to a determination that its potential liability is so limited. However, the court does hold that the plaintiff's argument that there are either twenty or twenty-two U.M. coverages available to him is not a sound one.

II. REFORMATION

■ The plaintiff asserts that both he and Mike Amis, the agent who sold him the policy, intended that the policy that was to be issued would provide him with $200,000.00 worth of U.M. coverage. As evidence of this, the plaintiff presents his own affidavit in which he swears that he thought he was getting "coverage on all the vehicles that I had on my lot at any time." He also submits the affidavit of Amis to the effect that he and the plaintiff "discussed his uninsured motorist and Mr. Pride wanted the maximum coverage he could get by law." He further avers that Mr. Pride "wanted the $200,000.00 in uninsured motorist coverage as his coverage plus his two service vehicles he had at that

---

**4.** A minor difference in the amount of the lump-sum premium and the amount which would have been charged for eight separate premiums will not defeat the plaintiff's claim. Quantity discounts will be recognized as such.

time." Following the submission of Amis' affidavit, his deposition was taken. The transcript of that deposition shows that when Mr. Amis was asked by plaintiff's counsel whether his affidavit was true, he replied that it was "basically true," but that he could not "say that Mr. Pride did, in fact, say, 'I want to purchase so and so....'" Deposition of Mike Amis, p. 38. Earlier, while being questioned by defense counsel, the following exchange took place:

Q: Did you ever agree on behalf of any insurance company to afford $200,000.00 in uninsured motorists coverage?

A: No. No. This is the time we're taking the application and we're talking about—when you take an application on insurance, you discuss the limits and the outer limits and the possibilities and all of these things, and then when the policy is delivered, I'm sure, oftentimes they're probably not calculated as I thought they would be calculated.

*Id.* at 26.

Mississippi courts apply the general law of contracts to insurance cases, including the rules governing reformation. *Johnson v. Consolidated American Life Ins. Co.,* 244 So.2d 400 (Miss.1971). Reformation of an insurance contract is available "where mutual mistake in the writing of an insurance contract results in the written terms not expressing the clear intent and understanding of the parties." *Lititz Mutual Ins. Co. v. Miller,* 210 Miss. 548, 50 So.2d 221, 224 (1951) [quoting 4 Appleman, Insurance Law and Practice, § 2913 (1941)]. In a suit for reformation, the court may not make a new contract for the parties. *Rogers v. Clayton,* 149 Miss. 47, 115 So. 106 (1928). "Reformation will not add a term as to which the parties have never reached an agreement, for in such case the court would be making a new contract for the parties." 17 Couch on Insurance 2d § 66:9 (Rev. ed. 1983). Under Mississippi law, the burden is on the party asserting mutual mistake to prove such a mistake occurred *beyond a reasonable doubt. Wise v. Scott,* 495 So.2d 16, 19 (Miss.1986). (Emphasis added.) The evidence presented in this case falls well short of reaching this level. There is no proof at all that Amis

and Pride reached an agreement that Pride would have $200,000.00 in uninsured motorist coverage. The proof on that point is merely that Mr. Pride wanted as much U.M. coverage as he could get and that $200,000.00 was a figure that was discussed. This is clearly insufficient evidence to justify a finding that the plaintiff had proven beyond a reasonable doubt that an agreement was reached that the defendant would provide $200,000.00 in coverage and that this agreement was mistakenly omitted from the draft of the total agreement.

## III. CONCLUSION

The defendant has not shown that it is entitled to summary judgment that the amount of its exposure under the U.M. portion of the policy in question is only $10,000.00. However, the court is of the opinion that General Agents' potential liability does not exceed $80,000.00.

The plaintiff has failed to prove its case for reformation of the contract.

An order in conformance with this opinion shall issue.